PETA LEWIS HALLISEY, SBN: 114501
BRANTON & WILSON, APC
701 B Street, Ste 1255
San Diego, California 92101
619.236.1891 (phone)
619.236.8005 (fax)
plhallisey@brantonwilson.com

STEPHEN L. SCHREINER, SBN: 112802
SOLOMON WARD SEIDENWURM & SMITH LLP
401 B Street, Suite 1200
San Diego, California 92101
619.231.0303 (phone)
619.231.4755
sschreiner@swsslaw.com

Attorneys for Plaintiffs

FILED
08 JUL -7 PM 4:11

CLERK U.S. DISTRICT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ECL      DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 1210 JLS NLS
-P.N.

| | |
|---|---|
| LYMS, INC.; WENDY YOUNGREN AND CATHY MEANS AS SUCCESSOR TRUSTEES OF THE LYMOS 401(k) PLAN,<br><br>Plaintiffs,<br><br>vs.<br><br>BRUCE MILLIMAKI AND MICHAEL EGGERT, FORMER TRUSTEES OF THE LYMOS 401(k) PLAN; GARY BERMAN, INDIVIDUALLY,<br><br>Defendants | Case No.:<br>COMPLAINT for BREACHES OF FIDUCIARY DUTY UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA"), 29 U.S.C. §1001 *et seq.* AND BREACH OF CONTRACT UNDER 29 USC § 1367(a)<br><br>JUDGE: |

**SERVICE VIA CERTIFIED MAIL:**

THE SECRETARY OF THE UNITED STATES DEPARTMENT OF LABOR AND THE INTERNAL REVENUE SERVICE AS REQUIRED UNDER ERISA, 29 U.S.C. §1132(h).

Plaintiffs LYMS, Inc. (the "Plan Sponsor") and Wendy Youngren and Cathy Means, Successor Trustees of the LYMOS 401(k) Plan (the "Successor Trustees" and the "Plan", respectively), hereby allege:

## PARTIES AND PRELIMINARIES

1. The Plan Sponsor, LYMS, Inc., is a California corporation organized and existing under the laws of the State of California with its principal place of business located in the County of San Diego. It provides accounting and related services together with its affiliated company, Lipsey, Youngren, Means Ogren & Sandberg LLP.

2. The Successor Trustees, Wendy Youngren and Cathy Means, are certified public accountants residing and working in the County of San Diego.

3. The Plan is an employee pension benefit plan as defined under ERISA, 29 U.S.C. § 1002(2). The Plan provides retirement benefits to the employees of the Plan Sponsor and its related company.

4. Bruce Millimaki ("Millimaki") is a certified public accountant residing and working in the County of San Diego.

5. Michael Eggert ("Eggert") is a certified public accountant residing and working in the County of San Diego.

6. Gary Berman ("Berman"), doing business as L & S Pension Services, is a third party administrator working in San Diego County. Mr. Berman previously provided administrative services to the Plan Sponsor for operation of the Plan.

## JURISDICTION AND VENUE

7. The jurisdiction of this court over the subject matter of this action is predicated on 28 USC § 1331. This action brings breach of fiduciary duty claims arising under 29 U.S.C. §1132(a)(2) for relief under 29 U.S.C. §1109 and claims under 29 U.S.C. §1132(a)(3) for equitable relief concerning defendants' mismanagement of a qualified retirement plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq. ("ERISA"). This Court has exclusive subject matter jurisdiction over these claims pursuant to 29 U.S.C. §1132(e)(1).

8. This complaint also brings supplemental state law breach of contract claims against defendant Berman under 28 U.S.C. §1367(a).

9.   Venue is proper in this court district under 29 U.S.C. §1132(e)(2) because the Plan is administered here and all of the defendants reside and work.

## FACTUAL BACKGROUND

### The Company and Its Predecessors

10.   In approximately 1991, Millimaki joined Robert Lipsey ("Lipsey"), a certified Public Accountant and founding member, as a partner in a firm then known as Robert Lipsey & Company (the "Company"). RL&C engaged in the business of public accounting, with its headquarters and principal place of business in San Diego County.

11.   In or about 1992, RL&C became a professional corporation, Robert Lipsey & Co., Inc. The professional corporation has been renamed and reorganized over time resulting in its present form as LYMS, Inc. (the "Plan Sponsor"). The affiliated company, formed in or about 2001, was then known as Lipsey, Millimaki & Company, CPAs LLP and is now known as Lipsey, Youngren, Means Ogren & Sandberg LLP ("LYMOS"). LYMS, Inc. and LYMOS together constitute the Company.

12.   From approximately 1991 through June 30, 2005, Lipsey and Millimaki were partners or shareholders in the Company and its predecessors. During the existence of those firms, Lipsey and Millimaki practiced accounting together for approximately 15 years.

13.   In or about December 2004, Millimaki and Eggert, a professional employee of the Company, advised Lipsey that they desired to disassociate from the Company. By July 2005, Millimaki, Eggert and a number of other Company employees had moved out of the Company's offices and begun work with Millimaki Eggert LLP ("M&E"), a competing accounting firm formed by Millimaki and Eggert.

14.   The circumstances surrounding the breakup of the Company and the departure of Millimaki and Eggert ultimately lead to the discovery of facts that form the basis of the claims for relief in this action, as well as two state court proceedings consolidated as one action: *Millimaki v. Lipsey et al*, and *Lipsey v. Millimaki et al*, San Diego Superior Court case No. GIC 849308/860755 (2006)(the "Dissolution Cases").

//

//

### The Plan and Its Predecessors

15. Since October 1, 1991, the Plan Sponsor and its predecessors have sponsored a tax-exempt qualified employee retirement plan (the "Plan") in which certain employees of the Company and its predecessors were eligible to participate. The Plan is currently known as the LYMOS 401(k) Plan.

### Millimaki and Eggert's Failure to comply with ERISA's Fiduciary Standards

16. During the period from October 1991 through June 2005, Millimaki assumed sole fiduciary responsibility for the operation and administration of the Plan on behalf of the Plan Sponsor. Millimaki handled all of the responsibilities of the ERISA (Employee Retirement Income Security Act of 1974, as amended) plan administrator[1], supervising all administrative matters related to the operation of the Plan. Millimaki retained the services of Gary Berman of L & S Pension Services to act as the contract administrator for the Plan and to assist Millimaki in his role as the ERISA Plan Administrator.

17. Millimaki was a Plan trustee from the adoption date of the Plan. Eggert was a trustee from December 9, 1998 until both Millimaki and Eggert were removed in 2005, and in this capacity, they were responsible for the management and disposition of the Plan's assets.

18. Cathy Means and Wendy Youngren were appointed as Successor Trustees effective July 1, 2005 and Bruce Millimaki and Michael Eggert were removed as Trustees on July 21, 2005.

### Millimaki's and Eggert's Refusal to Step Down As Plan Trustees

19. As is common in business dissolutions, the parties disagreed on the value of the Company interest held by Millimaki. Attempts to resolve the various disputes by settlement failed leading to the filing of the Dissolution Cases.

20. Millimaki and Eggert left the Company on June 30, 2005. In early July of 2005, Eggert informed the Company that no other trustees would be allowed to act on behalf of the Plan until he and Millimaki had disbursed all the funds from the Plan (at some unspecified future time).

---

[1] As defined under ERISA §3 (16)(A), 29 U.S.C. §1002 (16)(A).

Millimaki and Eggert continued to act as Plan trustees for more than six months after leaving the Company. During this time, Millimaki and Eggert filed Forms 5500 for the Plan (required information returns), made unauthorized distributions of money from accounts of the Plan to themselves and their Plan, and filed Forms 1099R for the Plan.

21. On July 21, 2005, the Company gave Millimaki and Eggert written notice that that they were terminated as trustees of the Plan effective as of thirty days after receipt of the notice. The termination notice specified that Millimaki and Eggert were required to return all Plan documents and records and to provide the Successor Trustees with a final trust accounting of the Plan assets (as required by ERISA and the Plan document).

22. Notwithstanding the written termination notice, Millimaki and Eggert consistently failed and refused to step aside as trustees of the Plan. Instead, Millimaki and Eggert continued to purport to act as trustees of the Plan until sometime in 2006. Moreover, as alleged in more detail below, Millimaki and Eggert refused to turn over the Plan's records and documents or to provide the required accounting to the Plan's Successor Trustees, thereby hindering the Successor Trustees in the performance of their duties.

23. Millimaki's and Eggert's above-described conduct reflects their intentional disregard of the fiduciary and other duties imposed upon them as trustees of the Plan, their repudiation of the Plan's governing documents, and their willful refusal to provide Plan accounting and other information as required under ERISA.

24. Throughout the Dissolution Cases settlement negotiations, Millimaki expressly and implicitly stated that he was in possession of accounting records and other documents covering his approximately 15 years as the Plan Administrator and a trustee of the Plan. Neither the Successor Trustees nor the Company had any knowledge or information indicating that Millimaki, Eggert, and Berman **did not**, in fact, have complete or adequate accounting records or other documentation concerning the Plan.

25. Under a proposed settlement agreement in the Dissolution Cases, Millimaki and Eggert agreed to cease purporting to act on behalf of the Plan, and to notify any affected third parties

that they were no longer Plan trustees. The proposed agreement also required Millimaki and Eggert to deliver, on or before March 13, 2006, all accounting records and other documents concerning the Plan that they had obtained in their capacity as trustees of the Plan.

26. On March 13, 2006, Millimaki and Eggert again failed to deliver the necessary Plan records, providing only a small package of brokerage statements. At the time, Millimaki and Eggert claimed not to have any other records pertaining to the Plan, an assertion that was both inconceivable in light of their long tenure as trustees, and inconsistent with their continuing purported actions on behalf of the Plan.

27. As a result, the Successor Trustees and the Company insisted that Millimaki and Eggert produce all of the Plan records and documents and declined to execute the proposed settlement agreement until Millimaki and Eggert did so. In response, Millimaki and Eggert claimed that they had left the remaining Plan records in the Company's offices upon their departure, that the Company or its personnel must have lost the documents, and that the only Plan-related documents in their possession consisted of a small number of investment brokerage statements.

28. Some time later, Millimaki and Eggert, through Berman, finally produced partial accounting records for the Plan. Those records were incomplete and full of errors and inaccuracies. Among other inadequacies, the trust accounting prepared by Berman and used to prepare the Forms 5500 for the Plan had inconsistent ending and beginning balances from year to year.

29. It soon became evident why Millimaki and Eggert had refused either to step down as Plan trustees or to provide any records or documents concerning the Plan: they were attempting to conceal their mismanagement of and potential problems with the Plan. The Plan Sponsor then realized that the potential costs and liabilities to the Plan and to the Company as a result of the former trustees' conduct -- all of which Millimaki and Eggert had attempted to conceal -- were unquantifiable, might be extreme, and would certainly affect the value of the firm at the time of his departure, which was a key variable in any settlement discussions. As a result, the parties did not reach any binding, written agreement to settle the Dissolution Cases.

30. Eventually, Millimaki filed a motion for the appointment of a receiver or the issuance of an injunction which the state court declined, conditioned on the Company's agreement to deposit $230,000 into a court-supervised escrow account pending the outcome of the Dissolution, to be disbursed on further order of the state court. To date, the state court has approved the distribution of $190,000 to Millimaki and retains the sum of $40,000 in an interest bearing escrow pending resolution of the ERISA claims. In addition, the court determined that all issues in the case, other than the parties' respective ERISA rights and remedies, were resolved and dismissed. By order dated January 5, 2007 the court permitted Millimaki to retain the $190,000, without prejudice to the rights of the Successor Trustees, the Company, and the Plan to seek repayment of those funds in connection with their claims for mismanagement of the Plan by Millimaki and Eggert.

### Discovery of Plan Irregularities

31. During and after the settlement negotiations described above, the Company and the Plan's Successor Trustees attempted to evaluate the status of the Plan, its accounting records, and its compliance with applicable laws and regulations. Toward that end, the Company engaged separate consultants and legal advisors with expertise in qualified retirement plans.

32. The Plan's Successor Trustees, as well as the advisors and attorneys hired by the Company, were hampered in their efforts to investigate the status of the Plan by Millimaki's and Eggert's continuing refusal to turn over the Plan's trust accounting records and other documents. After the collapse of settlement negotiations, however, Millimaki, Eggert, and Berman finally began to provide some of the requested documents.

33. Subsequent review of those documents by the Plan's Successor Trustees and their advisors revealed that a number of compliance failures and other irregularities occurred during Millimaki's and Eggert's tenures as former trustees of the Plan. Those shortcomings include, but are not necessarily limited to, the following:

(a) Failure to amend the Plan properly for legal requirements necessary to maintain the tax-qualification of the Plan;

(b) Refusal to relinquish control of the Plan assets following their removal as trustees;

(c) Refusal to provide the Successor Trustees with Plan documents and records and refusal to cooperate in good faith with the Successor Trustees, all in violation of their ERISA fiduciary responsibilities;

(d) Failure properly to account for the Plan's assets, and failure to either adopt and implement an ERISA Investment Policy Statement or to obtain professional investment advice sufficient to comply with their fiduciary responsibilities under ERISA (see, e.g., 29 CFR §2509.94-2).

(e) Approval of a "rollover transaction" involving a Plan participant, the source, origin and amount of which have been unverifiable, leading the Trustees to conclude that this "rollover" may not constitute a qualified rollover and may, because of the facts involved, constitute an abusive tax avoidance transaction.

34. In connection with the acts and omissions described above, Millimaki and Eggert engaged in conduct that constitutes, at a minimum, gross mismanagement of the Plan and may reflect intentional wrongdoing. Moreover, Millimaki and Eggert were aided and abetted in this conduct by Berman, in his role as contract administrator[2].

## The VCP Submission

35. In the meantime, the Company, the Plan, and the Successor Trustees continued working with their ERISA consultants and attorneys to finalize and file a voluntary compliance program

---

[2] Plaintiffs subsequently learned that although Millimaki described Berman as the Plan's "administrator", Millimaki, on behalf of the Company, paid Berman no fees in this capacity. Plaintiffs also learned that the compensation arrangement between Millimaki and Berman was that Millimaki would refer clients to Berman in exchange for advice from Berman.

("VCP") submission to the Internal Revenue Service ("IRS"). The VCP program set forth in Rev. Proc. 2006-07, provides plan sponsors with the opportunity to correct operational plan defects, including the types of defects created by Millimaki's, Eggert's, and Berman's mismanagement of the Plan.

36. As detailed below, the VCP submission involved significant costs paid by the Company on behalf of the Plan, and tremendous unreimbursed expenditures of time by the Company's personnel. Moreover, the questionable rollover transaction (discussed in more detail below) is *not* remediable under the VCP program, and thus exposes the Plan – as well as the Company – to future audit problems and substantial potential liability.

### The IRS Compliance Statement and Corrective Action Requirements

37. After extended review of the VCP submission, the IRS identified a number of serious problems resulting from Millimaki's, Eggert's, and Berman's mismanagement of the Plan. These problems, which involve violations of a number of provisions of the Internal Revenue Code, as well as the terms of the Plan itself, include:

(a) Failing to provide documents correctly identifying the employer under the Plan (which originally triggered the need for the VCP submission);

(b) Allowing ineligible employees – *including Millimaki's own wife* – to participate in the Plan;

(c) Failing to meet contribution testing requirements governing highly compensated employees in *all five years tested* (1997 through 2001), resulting in excess contributions totaling $22,220.80 for the years in question, and requiring the Company to make an additional contribution in that amount for its non-highly-compensated employees within 150 days of receipt of the VCP; and

(d) Allowing plan participants to exceed maximum income deferral levels for the years 1996 through 2001.

38. The IRS issued a Compliance Statement on August 5, 2007 conditioning the ongoing tax-

qualification of the Plan upon a complete restatement of Plan documents as well as the completion of certain corrective actions and payments.

### The Questionable Rollover Transaction

39. The VCP Compliance Statement also includes language to the effect that it may not be relied upon by the Plan or the Plan Sponsor for the purpose of asserting that they were not parties to an abusive tax avoidance transaction. In the VCP submission, the Company was obligated to disclose to the IRS a transaction for which a Form 1099R was issued in 2005 by Millimaki to a former Plan participant, for which neither the Plan's former trustees, Millimaki and Eggert, nor the Plan's prior third party administrator, Berman, ever produced relevant records. This transaction involved a substantial amount of money, possible tax avoidance by the former employee, and potential tax liabilities to the Plan (all of which would become liabilities of the Company) if the facts are finally uncovered by a future IRS audit. Therefore, the Plan remains encumbered by significant potential claims and contingent liabilities. Moreover, to the extent any such contingent liabilities become actual obligations, they will automatically accrue to the Company, as the Plan's Sponsor.

### Summary of Damages

40. As of October 31, 2007, the Company, on behalf of the Plan, had incurred and paid significant professional fees and related costs in analyzing, reporting, and attempting to rectify legal and accounting deficiencies in the Plan resulting from Millimaki's, Eggert's, and Berman's above-described acts and omissions. These expenses include legal fees, retirement plan consulting charges, and the costs of preparing the VCP submission and remedying the failures as required under the IRS Compliance Statement.

41. In addition, the Company is obligated to contribute an additional $22,220.80 to the Plan on behalf of lower-compensated employees to equalize the excess contributions by highly compensated individuals for the years 1997 to 2001.

42. Finally, the Company expects to incur additional professional fees to complete the

correction of all Plan deficiencies identified and required under the Compliance Statement. The total cost to the Plan and the Company is estimated to be a minimum of $325,000.

## CLAIMS FOR RELIEF

**First Claim For Breach of Fiduciary Duty under 29 U.S.C. § 1132 (a)(2) for appropriate relief under 29 U.S.C. § 1109**

43. Plaintiffs hereby incorporate the allegations included in paragraphs 16 through 42.

44. ERISA imposes a prudent man standard upon fiduciaries in their operation and administration of a qualified retirement Plan. ERISA imposes certain remedies for any failure to comply with these fiduciary duties, including relief under 29 U.S.C. §1132(a)(2): (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

48. Millimaki, as trustee, failed to adopt and implement an ERISA required Investment Policy Statement, or, at a minimum, to seek professional investment advice concerning the proper investment of the Plan's assets. This failure subjected the Plan to a loss of earnings, to be demonstrated according to proof. Under ERISA, Millimaki is required personally to make good any such losses to the Plan.

49. Eggert, as Millmaki's co-trustee, had an obligation to take action concerning these investment issues when he realized that Millimaki had failed or refused to do so. Millimaki is equally personally liable under ERISA §405, 29 U.S.C. §1105 for his failure to act, and should be require to make good any losses to the Plan occasioned by this failure.

49. Millimaki and Eggert likewise failed to provide appropriate investment options for the self direction of the participants' 401(k) deferral accounts as required under ERISA §404(c). Accordingly, any participant losses to the Plan may be recoverable as the fiduciary protections of §404(c) did not apply. See, e.g., *Larue v. Dewolff, Boberg & Associates, Inc. et al*, 128 S. Ct.

1020 (2008) (Sections 409 and 502(a)(2) authorize a participant in a defined contribution pension plan to sue to recover losses to the plan caused by a fiduciary breach even though the losses will be allocated to the participant's individual account).

**Second Claim For Breach of Fiduciary Duty under 29 U.S.C. §1132(a)(3)**

50. Plaintiffs hereby incorporate the allegations included in paragraphs 16 through 42.

51. As Plan Administrator, Millimaki owed the Plan and its predecessors, the Company and its predecessors (as the Plan's sponsors), and the Plan's participants strict fiduciary duties of trust, loyalty, and due care. More specifically, the Plan, the Company, and the Company employees who were participants in the Plan entrusted Millimaki with responsibility for (1) diligently administering the Plan to ensure its compliance with all applicable tax regulations and other requirements, (3) accurately reporting the Plan's activities to the appropriate regulatory authorities, and (4) fully accounting for the Plan's assets to all interested parties, including the Plan's beneficiaries. As a result of the operational defects that arose from Millimaki's failure to manage and administer the Plan in accordance with ERISA, the Company has advanced significant VCP fees, legal fees and other correction expenses on behalf of the Plan, awaiting the VCP Compliance Statement. The Company seeks to recover these expenses from Millimaki. Most of the fees and expenses sought are properly expenses of the Plan itself. The Plan document in effect when all of these problems occurred states as follows about payment of expenses from the plan:

"All expenses of administration may be paid out of the Trust Fund unless paid by the Employer. Such expenses shall include any expenses incident to the functioning of the Administrator, or any person or persons retained or appointed by any Named Fiduciary incident to the exercise of their duties under the Plan, including, but not limited to, fees of accountants, counsel, investment managers, agents (including nonfiduciary agents) appointed for the purpose of assisting the Administrator or Trustee in carrying out the instructions of Participants as to the directed investment of their accounts (if permitted) and other specialists and their agents, the costs of any bonds required pursuant to Act Section 412 and other costs of administering the Plan. Until paid,

the expenses shall constitute a liability of the Trust Fund."

52. Under ERISA a fiduciary may bring a claim to enforce and redress ERISA's provisions, and to obtain appropriate equitable relief. 29 U.S.C. §1132(a)(3). See, e.g., *Waller v. Blue Cross*, 32 F.3d 1337, 1339 (9th Cir. 1994).

**Third Claim for Negligence against Defendant Berman under 28 U.S.C. §1367(a)**

53. Plaintiffs hereby incorporate the allegations included in paragraphs 16 through 42.

54. At all times relevant to this dispute, Berman was obligated by virtue of his status as the contract administrator of the Plan to exercise due care and reasonable diligence providing services for the administration of the Plan, including preparation and maintenance of the Plan's documents, records, and data.

55. Berman breached his duties of due care and reasonable diligence. More specifically, Berman maintained incomplete records, prepared and filed erroneous information returns with the IRS for most years, participated in questionable rollover transaction that could cause unreported tax liabilities for the Plan and other potential adverse consequences. As a direct result and proximate result of Berman's failure to exercise due care and reasonable diligence, the Company and the Plan have suffered damages in an amount to be proven at trial, in excess of the minimum jurisdictional limit of this Court, plus interest on those damages at the maximum legal rate.

**Fourth Claim for Breach of Contract against Defendant Berman under 28 U.S.C. §1367(a)**

56. Plaintiffs hereby incorporate the allegations included in paragraphs 16 through 42.

57. Berman agreed to provide and did provide third party administration services to the Plan and the Former Trustees. Berman breached his obligations under the agreement by, among other things, preparing defective Plan documents and otherwise failing to perform the services standard in his industry.

**REQUEST FOR RELIEF**

The Successor Trustees and the Company hereby request the following relief:

1. An order imposing a constructive trust on the $190,000 conditional payment to Millimaki;

//
//

2. An order releasing the $40,000 in escrow to the Company as reimbursement for the Plan expenses it has incurred in correcting the operational defects and other costs associated with Millimaki and Eggert's breaches of fiduciary duty;

3. An order requiring Millimaki to restore to the Plan lost profits resulting from his failure to comply with his investment fiduciary duties;

4. An order requiring Millimaki and Eggert personally to make the Plan whole to the extent not otherwise achieved, including any future, but presently unknown losses to the Plan arising out of their tenure as Former Trustees;

5. An order under California law awarding the Company damages for Berman's negligence and breach of contract;

6. An order for attorneys' fees and costs under ERISA, 29 U.S.C. §1132 (f); and

7. For such further order as the court deems appropriate.

Dated this 7th day of July, 2008

BRANTON & WILSON, APC

By: /s/ Peta L. Hallisey
PETA LEWIS HALLISEY

```
        UNITED STATES
       DISTRICT COURT
    SOUTHERN DISTRICT OF CALIFORNIA
         SAN DIEGO DIVISION

       # 152691    - MB
       * * C O P Y * *
        July 07, 2008
           16:17:45


       Civ Fil Non-Pris
   USAO #.: 08CV1210 CIVIL FILING
   Judge..: JANIS L. SAMMARTINO
   Amount.:              $350.00 CK
   Check#.: BC20631



       Total-> $350.00



   FROM: LYMS INC, YOUNGREN WENDY AND
         MEANS, CATHY, SUCCESSOR
         TRUSTEES OF LYMOS 401K PLAN VS
         MILLIMAKI, BRUCE AND EGGERT, E
```

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LYMS, INC.; Youngren, Wendy and Means, Cathy, Successor Trustees of the LYMOS 401(k) Plan

(b) County of Residence of First Listed Plaintiff: **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Branton & Wilson, APC; 701 B Street, Ste 1255, San Diego, CA 921010. 619.236.1891; Peta Lewis Hallisey (see attachment)

## DEFENDANTS
Millimaki, Bruce and Eggert, Michael, Former Trustees of the LYMOS 401(k) Plan

County of Residence of First Listed Defendant: **San Diego**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

FILED
08 JUL -7 PM 4:11
[illegible clerk stamp]
BY: _____ DEPUTY
'08 CV 1210 JLS NLS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☒ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**29 U.S.C. section 1132**
Brief description of cause:
**Breach of Fiduciary Duty under ERISA**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: **7.7.08**
SIGNATURE OF ATTORNEY OF RECORD: **Peta L. Hallisey**

**FOR OFFICE USE ONLY**
RECEIPT # **15269** AMOUNT **$350.00** APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

PD 07/07/08

CIVIL COVER SHEET ATTACHMENT

I.   (c):  Second Attorney of Record:

STEPHEN L. SCHREINER, SBN: 112802
SOLOMON WARD SEIDENWURM & SMITH LLP
401 B Street, Suite 1200
San Diego, California 92101
619.231.0303 (phone)
619.231.4755
sschreiner@swsslaw.com