# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYMS, INC., et al, <br><br> Plaintiffs, <br><br> vs. <br><br> BRUCE MILLIMAKI, et al, <br><br> Defendants. | CASE NO. 08cv1210-MMA(NLS) <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL** <br><br> [Doc. No. 25] |

    This matter comes before the Court on Defendants Bruce Millimaki, Michael Eggert, and Gary Berman's Motion to Disqualify Plaintiffs' counsel, attorneys with the firm of Farmer & Ridley LLP. Plaintiffs LYMS, Inc., Wendy Youngren, and Cathy Means oppose the motion. The Court found the motion suitable for decision without oral argument pursuant to Local Civil Rule 7.1(d)(1). For the following reasons, the Court **DENIES** the motion.

## BACKGROUND

    This action arises from events surrounding the dissolution of a company and the alleged mismanagement by Defendants of the company's qualified employee retirement benefit plan under the Employee Retirement Income Security Act of 1974, 28 U.S.C. §1001, *et seq* ("ERISA"). (*See Plaintiffs' First Amended Complaint* ("*FAC*"), Doc. No. 2, filed July 21, 2008.) Plaintiffs' amended complaint states that Defendants Millimaki and Eggert were partners or shareholders in Plaintiff company LYMS, Inc. from 1991 through June 30, 2005. (*FAC* ¶ 12.) During that time, Millimaki

acted as a trustee and administrative supervisor of the company's ERISA plan; Eggert acted as a trustee of the plan. (*Id*. ¶¶ 16-17.) Millimaki and Eggert left the company on June 30, 2005, but remained trustees of the plan. The company notified Millimaki and Eggert of their termination as plan trustees on July 21, 2005, but Defendants continued to act as purported trustees until some time in 2006. (*Id*. ¶¶ 20-22.)

Subsequent to Millimaki and Eggert's disassociation, the parties disagreed over the company's value and in 2006 commenced dissolution actions in state court. According to Plaintiffs, during settlement negotiations in the state cases it came to their attention that Defendants had been mismanaging the plan, breaching their fiduciary duties as trustees of the plan. The successor trustees of the plan claim to have discovered irregularities with the plan as a result of Defendants' actions during this period. In late 2006/early 2007, the state court determined that all claims had been resolved with respect to the dissolution of the company. Defendants' actions as trustees of the plan remained in contention, therefore the state court continues to hold money in an escrow account pending the resolution of the ERISA dispute. (*FAC* ¶¶ 19-34.)

The firm of Butterfield Schechter LLP represented Millimaki in the state court dissolution cases, and represents Millimaki, Eggert, and a third defendant, Gary Berman, in the instant litigation. According to defense counsel, prior to filing this action, counsel for the parties discussed mediating the ERISA dispute. (*Defendants' Memorandum*, 1.) Pursuant to these discussions, in June 2008 Robert Butterfield contacted attorney Robert Ridley of the firm Farmer & Ridley LLP to inquire whether Mr. Ridley, a nationally recognized ERISA expert, would serve as mediator of the ERISA dispute. (*Id*.) The contact consisted of a voice mail left by Mr. Butterfield for Mr. Ridley, and a subsequent telephone conversation between the two attorneys during which Mr. Ridley declined to mediate the dispute. Plaintiffs, represented at the time by the firms Branton and Wilson APC and Solomon Ward Seidenwurm & Smith LLP, filed their federal complaint against Defendants on July 7, 2008.

Approximately two months after commencing this action, Plaintiffs substituted Robert Ridley, Rebecca Mocciario, and Aurora Basa of Farmer & Ridley LLP as their counsel of record. (*See Plaintiffs' Motion for Substitution of Counsel*, Doc. No. 14, filed September 11, 2008.) On

1  September 16, 2008, Defendants filed a motion seeking to disqualify Farmer & Ridley LLP from
2  representing Plaintiffs, arguing that the June 2008 telephone conversation between Mr. Butterfield
3  and Mr. Ridley constitutes a conflict of interest sufficient to prevent the Farmer Ridley firm from
4  serving as Plaintiffs' counsel [Doc. No. 25]. Plaintiffs oppose the motion vigorously, arguing that
5  the brief conversation between Mr. Ridley and Mr. Butterfield does not give rise to a conflict based
6  on the relatively generic nature of the discussion. Defendants filed a reply, and the Court gave the
7  parties leave to file sur-replies. On November 14, 2008, former presiding District Judge Janis L.
8  Sammartino transferred the case to the undersigned, who took the matter under submission on the
9  pleadings on December 16, 2008 [Doc. No. 36].

10  The substance of the telephone conversation is at the heart of this dispute and the
11  determination of whether a conflict exists such that Plaintiffs' counsel must be disqualified from
12  representation in this case. Mr. Butterfield and Mr. Ridley's recollections of the discussion differ
13  significantly.

14      1.    <u>June 2008 Telephone Conversation According to Mr. Butterfield</u>:

15  Mr. Butterfield describes the conversation in his declaration attached in support of
16  Defendants' motion. (*See Defendants' Motion*, Exhibit "A," *Decl'n. of Robert Butterfield* ¶¶ 4-11.)
17  According to Mr. Butterfield, he contacted Mr. Ridley on approximately June 11 or 12, 2008 to
18  inquire whether he would mediate the ERISA dispute between Plaintiffs and his clients. He first left
19  Mr. Ridley a voice mail, and then spoke with him directly. He explained to Mr. Ridley that the case
20  involved a CPA firm, and was based on a personal falling out between his client and his client's
21  former business partner. He told Mr. Ridley that "'Plaintiffs were making a mountain of a mole
22  hill,' or words to that effect." He explained that Plaintiffs' counsel had incurred a large amount of
23  fees unnecessarily. He further explained that he believed his clients have a strong case and there
24  were no weaknesses to his knowledge that would justify a high settlement amount. Mr. Butterfield
25  told Mr. Ridley that his clients believed the third party administrator of the plan, Gary Berman, to be
26  the only person potentially at fault for mismanaging the plan. He indicated that he thought the case
27  could be resolved based on a legal analysis of ERISA, and therefore he thought Mr. Ridley, because
28  of his ERISA expertise, would be a good choice as mediator because he would be able to look at the

1  facts and assess blame.

2      2.    <u>June 2008 Telephone Conversation According to Mr. Ridley</u>:

Mr. Ridley describes the conversation in his declaration attached in support of Plaintiffs' opposition. (*See Plaintiffs' Opposition*, *Decl'n. of Robert Ridley* ¶¶ 6-31.) According to Mr. Ridley, Mr. Butterfield contacted him sometime in June 2008. He initially left a voice mail for Mr. Ridley, in which he stated that he wanted to discuss Mr. Ridley becoming a mediator in one of his firms' cases involving a dispute among partners and other in an accounting firm over ERISA issues. Mr. Butterfield did not identify any of the parties by name and did not provide Mr. Ridley with any facts about the case, or identify his clients. Because of the voice mail, Mr. Ridley knew prior to their telephone conversation of the request to mediate, and Mr. Ridley had decided that he did not want to serve as mediator in the case.

Mr. Ridley did not take any notes during the brief telephone conversation which occurred subsequent to the voice mail. Mr. Ridley told Mr. Butterfield that mediation "was not part of his 'skill set,'" and that he did not want to mediate the case. Mr. Butterfield attempted to persuade him otherwise, telling him that the case was "perfect" for him. Mr. Ridley has no recollection of Mr. Butterfield stating that Plaintiffs were "making a mountain out of a mole hill." Mr. Butterfield did not say anything to him regarding anyone's attorneys fees, nor did he say anything about the strength of his clients' case or discuss their settlement position. Mr. Ridley does not recall Mr. Butterfield stating that the case could be resolved based on a legal analysis of ERISA. Mr. Ridley recalls Mr. Butterfield stating that he wanted Mr. Ridley to be the mediator because of his ERISA expertise, and nothing further.

**DISCUSSION**

This Court is "committed to the highest standards of professionalism and expects those standards to be observed by lawyers who practice before it." Civ. L. R. 83.4(a). This Court adopts "the standards of professional conduct required by members of the State Bar of California, and decisions of any court applicable thereto;" moreover, attorneys must note the ABA's Model Rules of Professional Conduct and shall not "engage in any conduct that degrades or impugns the integrity of the court." *Id.* (b). The relevant California rule on conflicts of interest for attorneys is stated in Rule

3-310(E) of the California Rules of Professional Conduct, which provides:

> "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

The purpose of this rule is to assure that counsel devote undivided loyalty to their client. *See* MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. (2004). Conflicting loyalties produce inadequate representation, which threatens the interests of the clients and compromises the ability of court to mete out justice. The unsanctioned representation of conflicting interests is one of the most serious transgressions that a lawyer can commit. "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *San Francisco v. Cobra Solutions, Inc.*, 43 Cal. Rptr. 3d 771, 776 (2006) (quoting *People ex rel. Dep't of Corps. vs. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 378 (Cal. 1999)).

According to Defendants, Farmer & Ridley LLP's representation of Plaintiffs in this case violates Rule 3-310(E). (*Defendants' Memorandum*, 4.) Defendants claim that during the June 2008 telephone conversation, Mr. Butterfield disclosed confidential information, case strategy, and attorney work product to Mr. Ridley. (*Id*. at 5.) Specifically, Defendants argue that as a result of that conversation Mr. Ridley was privy to Mr. Butterfield's mental impressions with respect to the strength of Defendants' case, Defendants' position on settlement and their unwillingness to settle the case for a high dollar amount, and Defendants' plan to focus litigation strategy on a legal analysis of ERISA. (*Id*.) Defendants assert that the information disclosed during the telephone conversation is protected under Rule 3-310(E).

Furthermore, Defendants argue that although they were not clients of Mr. Ridley, this should not prevent the Court from finding that he has violated Rule 3-310(E). (*Id*. at 7.) Defendants base this claim on California case law which provides illustrations of what Defendants interpret to be comparable situations. Defendants claim that disqualification is warranted because Mr. Ridley had a duty to preserve the allegedly confidential information disclosed to him by Mr. Butterfield as a potential mediator in the case, a situation which they claim implicated Mr. Ridley's ethical duty to maintain the "integrity of the judicial process." (*Id*. at 8.)

Plaintiffs first note in their opposition that Mr. Ridley never entered into any kind of professional relationship with Defendants or defense counsel. (*Plaintiffs' Opposition*, 7.)[1] During the course of the telephone conversation, Plaintiffs assert that Mr. Butterfield did not share any client confidences, did not identify any of the parties by name, did not ask Mr. Ridley for any legal advice, and failed to retain Mr. Ridley as a mediator. As such, based on the substance of the brief conversation, Plaintiffs argue that Defendants' motion fails to raise any facts to demonstrate that Rule 3-310(E) is implicated in this case in any manner. Plaintiffs state that Mr. Butterfield did not provide Mr. Ridley with any confidential information or material, and dispute Mr. Butterfield's recollection of the conversation. Plaintiffs assert that even if the Court takes Mr. Butterfield's statement of the facts to be true, none of the facts he articulates in his declaration constitute any kind of confidential disclosure. (*Id.* at 9.)

The California state courts have held that disqualification of an attorney is appropriate where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information that may be used advantageously against an adverse party during the course of the litigation. *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 309; *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 596. However, the state courts have also repeatedly determined that "[m]ere exposure to the confidences of an adversary does not, standing alone, warrant disqualification." *See, e.g.*, *In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d at 589 (California courts have found there is no broad duty owed by an attorney to an opposing party to maintain that party's confidences in the absence of a prior attorney-client relationship; attorneys owe no duty of care to adversaries in litigation).

To warrant disqualification under the California standards of professional conduct, the moving party must show the information obtained by counsel was "confidential." *Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831, 843-844, 846. The "unfair advantage" obtained through the exposure to an adversary's information results from, in large measure, the confidential nature of that

---

[1] A dispute arose between the parties during the course of briefing the instant motion regarding the alleged untimely submission of Plaintiffs' opposition brief. (*See* Doc. No. 27.) Judge Sammartino disregarded Defendants' objections and allowed Plaintiffs' brief to remain part of the record of this case, concomitant with the Court's desire to adjudicate disputes on their merits.

1 information. Disqualification serves the purpose of "eliminating from the case the attorney who
2 could most effectively exploit the unfair advantage" obtained by possessing the confidential
3 information. *Gregori v. Bank of America*, *supra*, 207 Cal.App.3d at 309.

4     The Court must determine whether Mr. Butterfield shared confidential information regarding
5 Defendants' case to Mr. Ridley. Because the attorneys' accounts of their telephone conversation are
6 so discrepant, the Court must reconcile them somehow, or weigh the credibility of each declarant to
7 reach a conclusion. Mr. Butterfield describes the telephone conversation in much more detail than
8 Mr. Ridley. It is impossible for the Court to know why this is so. Perhaps the conversation was of
9 great import to Mr. Butterfield and therefore he remembers the discussion almost word for word. By
10 the same token, it is possible that Mr. Ridley found the conversation to be so unimportant that the
11 details now escape him. Whatever the case, the two accounts cannot be reconciled without raising
12 questions regarding the attorneys' integrity and the truthfulness of their representations to the Court
13 in this matter. The Court declines to make these inquiries.

14     The following facts are not in dispute. The telephone conversation was brief. The sole
15 purpose of the conversation was for Mr. Butterfield to ask Mr. Ridley to be a mediator. Mr. Ridley
16 said no. Mr. Ridley never acted as a mediator, nor did he entertain further discussions on the topic.
17 Neither Mr. Butterfield or his clients entered into a professional relationship with Mr. Ridley. As to
18 the disputed facts, the Court finds that even viewing those facts in the light most favorable to
19 Defendants, Mr. Butterfield shared no confidential information with Mr. Ridley during the telephone
20 conversation. Mr. Butterfield states that he shared the following case specific information: the case
21 involved an ERISA dispute and a CPA firm; the opposing party had incurred substantial legal fees;
22 he felt his clients have a strong case and were not going to settle for large amount of money; his
23 clients were of the opinion their third party administrator might be at fault; he thought the case could
24 be resolved based on a legal analysis under ERISA and his clients wanted a mediator versed in
25 ERISA law who would be able to assess blame to the Plaintiffs.

26     The Court finds that these statements, assuming they were made to Mr. Ridley, do not
27 qualify as confidential information. None of these statements amount to anything more than generic
28 musings by defense counsel in a situation where his clients are facing an ERISA lawsuit and have

1  been involved in protracted litigation with the opposing parties. Even if Mr. Butterfield had
2  mentioned his clients names, or the names of the opposing parties, the statements still do not qualify
3  as confidential information. The Court finds it questionable that Mr. Butterfield identified any of the
4  parties by name during the course of his conversation with Mr. Ridley, not only based on Mr.
5  Ridley's recollection of the discussion but also based on Mr. Butterfield's own declaration which is
6  ambiguous on this point at best. Regardless however, Mr. Ridley's momentary, sole exposure to the
7  information did not give rise to any sort of relationship with Mr. Butterfield or his clients from
8  which a duty can be imputed. Defendants insist that the statements made by Mr. Butterfield to Mr.
9  Ridley also conveyed their confidential litigation strategy and attorney work-product to Plaintiffs.
10 This assertion is without merit, as it is based on nothing more than Mr. Butterfield's personal
11 opinion regarding how Plaintiffs might interpret his statements. As a practical matter, the Court
12 cannot on its own conceive of how Plaintiffs might use Mr. Butterfield's alleged statements to gain
13 an advantage in this case.
14        In sum, the Court denies Defendants' motion and will not disqualify Farmer & Ridley LLP
15 from representing Plaintiffs in this case. In their opposition brief, Plaintiffs request the Court
16 consider sanctioning Defendants for bringing this motion pursuant to Federal Rule of Civil
17 Procedure 11. (*Plaintiffs' Opposition*, 18.) The Court declines to do so.

## CONCLUSION

19        Based on the foregoing, the Court **DENIES** Defendants' Motion to Disqualify Plaintiffs'
20 Counsel [Doc. No. 25]. The Court **ORDERS** counsel for the parties to contact jointly the Chambers
21 of Magistrate Judge Nita L. Stormes within three court days of the date of this Order to advise Judge
22 Stormes of the Court's ruling and initiate scheduling discussions based on the current procedural
23 posture of the case.
24        **IT IS SO ORDERED**.
25 DATED: January 15, 2009

Hon. Michael M. Anello
United States District Judge