1   **REBECCA B. MOCCIARO, SBN 89777**
    **AURORA L. BASA, SBN 245161**
2   **FARMER & RIDLEY LLP**
    555 S. Flower Street, Suite 2700
3   Los Angeles, California 90071
    Telephone: (213) 626-0291
4   Fax:(213) 833-7812
    rmocciaro@f-rlaw.com
5
    Attorney For Plaintiffs
6   LYMS, INC.; Wendy Youngren
    and Cathy Means As Successor Trustee
7   of The LYMOS 401(k) Savings Plan

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10
    LYMS, INC.; WENDY YOUNGREN AND          ) **CASE NO. 08-CV-1210-MMA-NLS**
11  CATHY MEANS AS SUCCESSOR TRUSTEE        )
    OF THE LYMOS 401(k) SAVINGS PLAN,       ) **MEMORANDUM OF POINTS AND**
12                                          ) **AUTHORITIES IN SUPPORT OF THE**
                                            ) **LYMS PARTIES' MOTION TO**
13                 Plaintiff,               ) **DISQUALIFY DEFENDANTS'**
                                            ) **DESIGNATED EXPERTS**
14    vs.                                   )
                                            )
15  BRUCE MILLIMAKI AND MICHAEL             ) JUDGE: Hon. Michael M. Anello
    EGGERT, FORMER TRUSTEES OF THE          ) MAGISTRATE JUDGE:  Hon. Nita L. Stormes
16  LYMOS 401(k) SAVINGS PLAN; GARY         )
    BERMAN INDIVIDUALLY,                    ) Date: May 7, 2010
17                                          ) Time: 2:00 p.m.
18                 Defendants.              ) (Date Reserved)
                                            )
19  _____ )
                                            )
20  BRUCE MILLIMAKI AND MICHAEL             )
    EGGERT,                                 )
21                 Counterclaimants,        )
                                            )
22    vs.                                   )
                                            )
23  LYMS, INC.                              )
                                            )
24                 Counterdefendant.        )
                                            )
25                                          )
                                            )
26                                          )
                                            )
27  _____ )

28                                    1

**TABLE OF CONTENTS**

1.  Introduction.................................................................................................................. 3

2.  Summary Statement of Facts Underlying this Dispute.................................................... 4

3.  The Court Has Broad Discretion In Disqualifying An Expert......................................... 5

4.  Mr. Rand Has a Conflict of Interest With The LYMS parties That Cannot Be Remedied. ........... 6

    A.   Mr. Rand "Switched Sides"; He Should Be Disqualified.......................................... 6

    B.   The LYMS Parties Had a Confidential Relationship With Defendants' Expert Witness ........... 7

    C.   The Court Should Avoid Impropriety...................................................................... 8

5.  Fairness Dictates that Mr. Rand Must Be Disqualified; Defendants Will Not Be Significantly

    Prejudiced With the Loss of Mr. Rand's Testimony ....................................................... 8

6.  Conclusion .................................................................................................................. 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' DESIGNATED EXPERTS

1   **TABLE OF AUTHORITIES**

2

3   **Cases**
    *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) ..................................................... 6

4   *City and County of San Francisco v. Cobra Solutions, Inc.,*  38 Cal. 4th 839, 847 (2006)..................... 7
    *City of Santa Barbara v. Sup. Ct.*, 122 Cal.App.4[th] 17 (2004) .............................................................. 6

5   *Comden v. Sup. Ct.*, 20 Cal.3d 906(1978). ............................................................................................. 8
    *County of Los Angeles v. Sup. Court,* 222 Cal. App.3d 647, 657 (1990) ............................................... 8

6   *Hewlett-Packard Co. v. EMC Corp. 330 F. Supp. 2d* 1087, 1092 (N.D. Cal. 2004)………………..5,7,8

7   *In re Complex Asbestos Litigation*, 232 Cal. App.3d 572 (1991)........................................................... 9
    *Shadow Traffic Network v. Sup. Ct.*, 24 Cal. App.4[th] 1067, 1080 (1994)…………………………. 6,7

8   *Wang Laboratories, Inc. v. Toshiba Corp., 762* F. Supp. 1246 (E.D. Va. 1991). .................................. 6

9   **Rules**
    Rule 3-310(E) of the California Rules of Professional Conduct .......................................................... 6

10  **Other Authorities**

11  Canon 9 of the ABA Model Code of Professional ................................................................................ 8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' DESIGNATED EXPERTS**

1    **1.     Introduction**

2            This motion is submitted concurrently with an *ex parte* application asking the expert discovery

3    cutoff date be tolled and continued pending the outcome of the hearing on this motion on May 7, 2010.

4    No trial date has been set, and the MSC in this matter is not set until June 9, 2010.  The pre-trial

5    hearing is not until July 26, 2010.

6            Regardless of the outcome of this motion to disqualify, the parties will have the time to depose

7    the experts, whether Mr. Rand remains on the expert list or not. The LYMS parties are prepared to go

8    forward with Mr. Rand's deposition should the Court determine that he should remain as Defendants'

9    expert.

10

11   **2.     Summary Statement of Facts Underlying this Dispute**

12           The LYMS parties believe that the Court is already more than well-aware of the facts

13   underlying this litigation, and will not repeat the substantive facts in this motion.

14           As set forth in greater detail in the Mocciaro Declaration, the original complaint in this case

15   was filed by Branton & Wilson, APC.   In part because Branton & Wilson had prepared the VCP at

16   issue in this case, and thus would be a percipient witness in this case, the LYMS parties retained new

17   counsel, Farmer & Ridley LLP.

18           The Defendants immediately moved to disqualify Farmer & Ridley as the LYMS parties'

19   counsel, based solely on a short telephone call between Defendants' counsel, Rob Butterfield, and Bob

20   Ridley, asking Mr. Ridley if he wanted to serve as the mediator in a case.  No specific information was

21   disclosed to Mr. Ridley, no parties were identified, no case strategies revealed.  That did not stop the

22   Defendants from filing a baseless motion that was denied.  Later, counsel for Defendant Gary Berman

23   raised concerns about the LYMS parties' newly designated expert, Alex Brucker, because Mr. Berman

24   had tried to leave an e-mail or phone message to Mr. Brucker at some unidentified point in time, a

25   message that Mr. Brucker apparently never returned.   Mr. Berman subsequently withdrew his

26   objection.

27

28                                                   4

1       Having contended that the 'conflict of interest' bar is set quite low, the Defendants now seek to

2   defend their continued use of Mr. Rand, someone who is with the law firm (**Luce Forward**) that

3   referred the LYMS parties to Branton & Wilson (see concurrently filed Lipsey Declaration), and who

4   spent 7 years (what his post-relationship conduct was with Branton & Wilson has not been explained

5   by Mr. Rand under oath, only in a letter where he skirts many of the issues with absolute statements,

6   again, not under oath).  Mr. Rand's response to Ms. Mocciaro's letter (and her letter to Mr. Rand) are

7   attached to the Mocciaro declaration that is filed concurrently with this Motion.

8       The parties[1] timely designated experts in September of 2009, but Mr. Rand's association with

9   Branton & Wilson was **not disclosed** until **March 25, 2010**, when the parties timely exchanged expert

10   reports.  Why this information was omitted is not clear; had it been noted in the September 9, 2009

11   designation, the issue could have been addressed months ago.

12       Ms. Mocciaro, counsel for the LYMS parties, raised the conflict issue as soon as it was brought

13   to her attention, and communicated her concerns to Defendants' counsel and to Mr. Rand directly.

14   What Mr. Rand knows from his years of practice with Branton & Wilson puts the LYMS parties at

15   odds with their own counsel, Branton & Wilson.  There is a clear appearance of impropriety.  His

16   involvement is more prejudicial than probative, and may cause confusion at trial.

17       Perhaps if Mr. Rand submits a sworn declaration answering the questions involved, as was

18   required of attorney Robert Ridley (multiple times) to defeat the Defendants' disqualification efforts

19   predicated on one short phone call, these issues can be resolved.

20

21   **3.   The Court Has Broad Discretion In Disqualifying An Expert**

22       Federal courts are entrusted with protecting the integrity of the adversarial process, protecting

23   privileges that otherwise may be breached, and promoting the public's confidence in the legal system.

24   *Hewlett-Packard Co. v. EMC Corp. 330 F. Supp. 2d* 1087, 1092 (N.D. Cal. 2004).

25

26

_____

27   [1] Defendant Gary Berman (the third party administrator) does not appear to have retained an expert witness in this case.

28

5

1         A district court is "vested with broad discretion to make discovery and evidentiary rulings

2   conducive to the conduct of a fair and orderly trial. . . .Within this discretion lies the power to exclude

3   or admit expert testimony." *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.

4   1980)(citations omitted).  In order to protect the integrity of the judicial systems, Plaintiff respectfully

5   submit that Defendants' expert witness, Karl Rand, should be disqualified because of an existing

6   conflict of interest with he LYMS parties and his lack of impartiality.   The LYMS Parties have not

7   waived any conflicts.

8

9   **4.**     **Mr. Rand Has a Conflict of Interest With The LYMS parties That Cannot Be Remedied.**

10        **A.**     **Mr. Rand "Switched Sides"; He Should Be Disqualified.**

11        Mr. Rand has effectively switched sides and should be disqualified. *Shadow Traffic Network*

12  *v. Sup. Ct.*, 24 Cal.App.4[th] 1067 (1994);  *City of Santa Barbara v. Sup. Ct.*, 122 Cal.App.4[th] 17 (2004);

13  *Wang Laboratories, Inc. v. Toshiba Corp., 762* F. Supp. 1246 (E.D. Va. 1991).

14        Prior to his current employment, Mr. Rand was employed as an attorney by the law firm of

15  Branton & Wilson for at least seven years.  Branton & Wilson prepared the LYMS parties' VCP

16  submission to the Internal Revenue Service and continues to represent the LYMS parties with regard

17  to its VCP submission.  The LYMS parties' VCP application consists of the same facts and issues as

18  those in the current litigation.

19        The LYMS parties are unsure when Mr. Rand "officially" ended his employment with the

20  LYMS parties' attorneys.  The LYMS parties are certain that Mr. Rand continued to have contact with

21  Branton & Wilson at the time Branton & Wilson worked on The LYMS parties' VCP application.

22  The LYMS parties' contact at Branton & Wilson is attorney Peta Lewis Hallisey.  As the Court is

23  aware, Ms. Hallisey has submitted declarations in support of various motions filed by the LYMS

24  parties.  As set forth in the Lipsey Declaration, Mr. Rand specifically had contact with Ms. Hallisey at

25  the time Branton & Wilson attorneys were working on the LYMS parties' VCP submission.

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' DESIGNATED EXPERTS**

1
2

      **B.**    **The LYMS parties Had a Confidential Relationship With Defendants' Expert Witness**

3
4

      Rule 3-310(E) of the California Rules of Professional Conduct precludes Mr. Rand from serving as an expert witness for Defendants.  Rule 3-310(E) states:

5
6
7
8
9

             A member shall not, without the informed written consent of the

          client or former client, accept employment adverse to the client or

          former client, where by reason of the representation of the client or

          former client, the member has obtain confidential information material

          to the employment.

10
11
12
13
14

      The Courts have not adopted a bright-line rule to determine whether disqualification of an expert is warranted.  However, general principles support the notion that disqualification is warranted where (1) there was a confidential relationship between the expert and the adversary and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation. *Hewlett-Packard Co. v. EMC Corp. 330 F. Supp. 2d* 1087, 1093 (N.D. Cal. 2004).

15
16
17
18
19
20
21

      It is not clear exactly when the LYMS Parties, or Mr. Lipsey, also a party, became a client of Branton & Wilson; the LYMS parties are attempting to obtain that information from Branton & Wilson.  Branton & Wilson had a direct attorney-client relationship with the LYMS parties.  The LYMS parties had and have an expectation of confidentiality with all of the attorneys of Branton & Wilson.  If Mr. Rand were employed by Branton & Wilson while Branton & Wilson was representing the LYMS parties, including Robert Lipsey, in any matter or capacity, the firm's conflicts of interest are imputed upon him.  ABA Model Rules of Professional Conduct Rule 1.9.

22
23
24
25
26

      There is a presumption that Mr. Rand possesses confidential information belonging to Plaintiff on the basis of his employment with Branton & Wilson at a time when Branton & Wilson represented Plaintiff. *City and County of San Francisco v. Cobra Solutions, Inc.,* 38 Cal. 4th 839, 847 (2006).  Branton & Wilson was retained to work on the LYMS parties' VCP; the VCP contains the same material facts as the underlying litigation.  Mr. Rand can ameliorate the problem by a sworn

27
28

1 declaration, not vague statements in his letter to Ms. Mocciaro.  Even those communications made to a

2 potential expert in a retention interview can be considered confidential information.  *Shadow Traffic*

3 *Network v. Sup. Ct.*, 24 Cal. App.4[th] 1067, 1080 (1994).  In *Shadow Traffic Network*, the appellate

4 court disqualified a party's entire firm after it retained an expert that had been interviewed by the other

5 party but not retained.  The interview had only lasted approximately one hour.  In this instance, Mr.

6 Rand had a longstanding relationship with Plaintiffs' attorneys.  Considering his length of employment

7 with Branton & Wilson, Rand probably continues to have contact with some of the firm's employees,

8 both professionally and personally.

9

10       **C.**    **The Court Should Avoid Impropriety**

11       Canon 9 of the ABA Model Code of Professional Responsibility states "A Lawyer Should

12 Avoid Even the Appearance of Professional Impropriety".  The LYMS parties admit that they have no

13 knowledge of the circumstances of Mr. Rand's departure from the firm of Branton & Wilson.

14 However, the LYMS parties are informed and believe and thereon allege that Ms. Hallisey was his

15 replacement.  The LYMS parties also know that Ms. Hallisey communicated with Mr. Rand at the

16 same time that she was working on the LYMS parties' VCP application.

17       Mr. Rand should be disqualified from serving as the Defendants' expert to protect the integrity

18 of the legal process.  Even the appearance of attorney impropriety should be avoided.  *Comden v. Sup.*

19 *Ct.*, 20 Cal.3d 906(1978).  In *Comden*, the Supreme Court held that the entire firm of an attorney who

20 is likely to testify at the client's trial should not continue to represent the client despite the fact that

21 another attorney in the firm had filed the lawsuit.  Considering Mr. Rand's long time affiliation with

22 Branton & Wilson, it would be reasonable that his impartiality would come into question.

23 **5.**    **Fairness Dictates that Mr. Rand Must Be Disqualified; Defendants Will Not Be**

24 **Significantly Prejudiced With the Loss of Mr. Rand's Testimony**

25       In a motion to disqualify an expert witness, courts also consider fairness to the affected party

26 and promotion of the integrity of the legal process.  *Hewlett-Packard Co. v. EMC Corp.,* 330 F. Supp.

27

28                                            8

1  *2d* 1087, 1093 (N.D. Cal. 2004).  Defendants must have known at the time they retained Mr. Rand that

2  he had been employed by Branton & Wilson for seven (7) years, yet they still hired him and his

3  relationship was not disclosed until his report.  Defendants should have notified the LYMS parties of

4  Mr. Rand's affiliation with Branton & Wilson at the time the parties' expert lists had been exchanged.

5  *County of Los Angeles v. Sup. Court,* 222 Cal. App.3d 647, 657 (1990); *In re Complex Asbestos*

6  *Litigation*, 232 Cal. App.3d 572 (1991)(Court disqualified firm after it hired a paralegal who had

7  previously worked for the opposing party for a period of three years).  The fees charged by Branton &

8  Wilson have become an issue in this litigation.  As an attorney for Branton & Wilson for many years,

9  Mr. Rand would have gained some insider knowledge as to his firm's attorneys and billing practices.

10          Defendants will not be prejudiced with the loss of Mr. Rand's testimony.  His deposition has

11  not yet been taken.  There are many qualified ERISA experts in the Southern California that have the

12  same expertise as Mr. Rand.  Defendants may argue that they will be unduly burdened if they are

13  required to retain another expert.  However, increased costs are a commonplace in litigation.

14  Moreover, no trial date has been set so they will have ample time to retain another expert.

15  **6.      Conclusion**

16          For the foregoing reasons, the LYMS parties respectfully request that this motion be granted in

17  its entirety, allowing the Defendants until May 30, 2010 to designate a replacement expert and submit

18  a substituted expert report, with expert depositions being completed by June 30, 2010.

19

20          Dated: April 6, 2010

21                                          FARMER & RIDLEY LLP

22

23          _Rebecca Mocciaro_

24          Rebecca Mocciaro
            Attorney For Plaintiffs

25          LYMS, INC.; Wendy Youngren
            and Cathy Means As Successor Trustee of

26          The LYMOS 401(k) Savings Plan

27

28                                          9