# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYMS, INC.; WENDY YOUNGREN and CATHY MEANS, as Successor Trustees of the LYMOS 401(k) Savings Plan,<br><br>Plaintiffs,<br>vs.<br><br>BRUCE MILLIMAKI and MICHAEL EGGERT, Former Trustees of the LYMS 401(k) Savings Plan; GARY BERMAN,<br><br>Defendants.<br><br>and related claims. | CASE NO. 08-CV-1210-MMA (NLS)<br><br>**ORDER (1) DENYING TRUSTEES' MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM FOR INDEMNITY; and (2) GRANTING LIPSEY'S MOTION FOR JUDGMENT ON THE THIRD PARTY COMPLAINT FOR INDEMNITY**<br><br>[Doc. Nos. 81 & 135] |

Now before the Court are two motions concerning an indemnity clause in a 401(k) profit sharing plan agreement, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001, *et seq.* In the first motion, Bruce Millimaki and Michael Eggert argue they are entitled to indemnity from their Employer for any breaches of their fiduciary duty in their capacity as Trustees of the pension plan. In the second, Robert Lipsey argues that any indemnification must come from the Employer and not against him as an individual. The Court took the motions under submission and without oral argument. [# 127 & 148] Summary judgment is not appropriate on whether the Trustees acted with gross negligence or willful misconduct that would defeat their contractual right to indemnification, thus, the Court **DENIES** the motion for summary judgment. The Court **GRANTS** the motion for judgment on the pleadings because the contract for indemnification is with the corporate entity, not the individual.

## Background

Bruce Millimaki formed an accounting firm (hereinafter "the Company") with Robert Lipsey in 1989. Lipsey Decl. ¶ 7; Millimaki Decl. ¶ 4.[1] In 1991, the Company adopted an employee retirement plan that is governed by ERISA. 29 U.S.C. § 1002(2); Millimaki ¶ 6; Second Amended Compl. ("SAC") ¶ 3. In 1994, Michael Eggert joined the Company. Eggert Decl. ¶ 4. The relevant Plan Agreement for the profit sharing plan and trust names Millimaki and Eggert as Trustees for the Company's pension plan. Meter Decl., Ex. 4 ¶ 10. The Plan Agreement named the Employer, that is the Company, as the Plan Administrator, *id.* ¶ 11; however, Gary Berman undertook all administrative duties as the third party administrator of the pension plan. Millimaki Decl. ¶ 21; *see* Hallisey Depo. at 34 ("typically . . . employers are not sophisticated in doing administration of the plan and rely on their third party administrator or other service provider to perform those services for them."). In addition to the duties imposed by law in ERISA, the Plan Agreement further defines the specific powers and responsibilities of the Administrator/Employer and the Trustees. Meter Decl. Ex. 4 §§ 2.4 & 7.1.

In the Spring of 2005, Millimaki and Eggert decided to form their own accounting firm and they recruited eight employees from the Company to join them in their new venture. Millimaki Decl. ¶¶ 12-14. In July 2005, they created Millimaki Eggert, LLP. Eggert Decl. ¶ 9.

For his part, Lipsey formed LYMS, Inc., renamed the Company's profit sharing plan, and appointed Wendy Youngren and Cathy Means as the Successor Trustees. Lipsey Decl. ¶¶ 26-27; Means Decl. ¶¶ 11-12.

The breakup of the firm was not amicable and litigation ensued in state court. Lipsey Decl. ¶¶ 24 & 32; Millimaki Decl. ¶¶ 15-18; Millimaki Depo. at 182-83; SAC ¶ 14.

In this federal action, Plaintiffs LYMS, Youngren, and Means sue Defendants

---

[1] Initially, the entity, Lipsey Millimaki & Company, Inc. was a corporation, but in 1999, they formed a limited liability partnership, Lipsey Millimaki & Company, LLP. For simplicity, the Court refers to the entity that owns the pension plan at issue in this case as "the Company." This avoids confusion between the names of the individuals and the names of their several accounting firms.

Millimaki and Eggert for various breaches of contractual and fiduciary duties under ERISA relative to their alleged mismanagement of the pension plan.[2] SAC ¶¶ 58-80. Some of the alleged breaches arose during the break-up of the partnership between Lipsey and Millimaki. For example, Millimaki and Eggert allegedly refused to resign as Trustees, even when notified in writing of their termination, and allegedly refused to provide Plan documents to the Successor Trustees. *Id.* ¶ 22. Other breaches were discovered when the pension plan was audited and the Internal Revenue Service questioned certain transactions, including whether a $237,000 contribution by employee Mark Schaim constituted a qualified rollover and whether Millimaki's wife qualified as a participant. *Id.* ¶¶ 46(e), 52(b).

In turn, Defendants Millimaki and Eggert filed a counterclaim against Plaintiff LYMS, Inc. for breach of contract, indemnity, and contribution. Answer & Countercl. ¶¶ 11-24. Finally, in a third party complaint, Millimaki and Eggert seek indemnity from Lipsey. [# 56].

The two pending motions concern the indemnity clause in the pension plan document, which provides: "The Employer agrees to indemnify and hold harmless the Trustee against any and all claims, losses, damages, expenses and liabilities the Trustee may incur in the exercise and performance of the Trustee's powers and duties hereunder, unless the same are determined to be due to gross negligence or willful misconduct." Meter Decl. Ex. 4 § 7.13.

## Discussion

### I. Summary Judgment on Indemnity of Trustees by the Company

Millimaki and Eggert move for summary judgment on their counterclaim for indemnification by the Employer for any liability they incur in the main action for their actions as Trustees of the pension plan.

---

[2] Plaintiffs' claims against Defendant Berman, the third party administrator, are not involved in this motion. On information and belief, Plaintiffs allege that Berman was not paid for his services but instead was remunerated with referrals from Millimaki. Lipsey Decl. ¶ 15; Means Decl. ¶ 31.
The Court dismissed a fraud claim as preempted by ERISA. [# 68]

1    Summary judgment is appropriate when the "pleadings, depositions, answers to
2 interrogatories, and admissions on file, together with the affidavits, if any, show that there
3 is no genuine issue as to any material fact and that the moving party is entitled to judgment
4 as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
5 (1986).

6    ERISA explicitly imposes a fiduciary duty on a named Trustee as well as any person
7 who exercises discretionary authority or control respecting management or disposition of
8 the plan's assets or who has any discretionary authority or responsibility in the
9 administration of the pension plan. 29 U.S.C. §§ 1002(21)(A) & 1102. Thus, there are two
10 categories of fiduciaries. Susan P. Sarota, *ERISA Fiduciary Law* 12-17 (2006); Dana J.
11 Domone, *Primer on ERISA Fiduciary Duties* 8-12 (1994). The first is a "named Trustee,"
12 who is designated in writing in the Plan Agreement. 29 U.S.C. § 1102(a). The second type
13 – a "functional" fiduciary – is not determined by title, but rather by the duties he performs
14 for the pension plan. 29 U.S.C. § 1002(21)(A); *Acosta v. Pac. Enter.*, 950 F.2d 611, 618
15 (9th Cir. 1991) (ERISA's definition of fiduciary "makes clear that a person's actions, not
16 the official designation of his role, determine whether he enjoys fiduciary status."). Even
17 when a corporation is a named fiduciary, the persons who act on behalf of the corporation
18 may become individual fiduciaries by virtue of their control and authority over the pension
19 plan. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995).

20    "An ERISA fiduciary must act for the exclusive benefit of plan beneficiaries, 29
21 U.S.C. § 1104(a)(1), and must act 'with the care, skill, prudence, and diligence under the
22 circumstances then prevailing that a prudent man acting in like capacity and familiar with
23 such matters would use in the conduct of an enterprise of a like character and with like
24 aims.' 29 U.S.C. § 1104(a)(1)(B). These duties are the 'highest known to the law.'"
25 *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (quoting *Donovan v. Bierwirth*, 680
26 F.2d 263, 272 n.8 (2d Cir. 1982)); *Donovan v. Mazzola*, 716 F.2d 1226, 1231 (9th Cir.
27 1983) ("the prudent person test applies to fiduciary obligations under ERISA" and that
28 standard of care derives from trust law).

Any person who breaches a fiduciary duty may be personally liable to the Plan; however, the Plan Agreement may provide for indemnity (unless the provision relieves a fiduciary from responsibility in violation of ERISA). 29 U.S.C. § 1110; *Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709, 714 (N.D. Cal. 1994).

### A. Separating Duties in Capacity as a "Trustee" of the Pension Plan

The Trustees devote a substantial part of their briefs to the several "hats" worn by Millimaki and Eggert in connection with the Company and its pension plan. They argue they cannot be held responsible for the alleged breaches of duty that were to be performed by the Plan Administrator/Employer.

Under the express terms of the Plan Agreement, Millimaki and Eggert were named Trustees. Millimaki Decl. ¶ 7; Eggert Decl. ¶ 5; Meter Decl. Ex. 4. Millimaki's and Eggert's duties in their roles as named Trustees are prescribed by ERISA and by the Plan Agreement. *E.g.*, Meter Decl. Ex. 4 § 7.1 (basic responsibilities) & § 7.2 (investment powers).

Millimaki and Eggert also, by virtue of their positions with the Company, performed certain administrative functions on behalf of the Employer. For example, Millimaki signed the pension plan agreement on behalf of the Employer. Meter Decl. Ex. 4.

Beyond the basic fact that Millimaki owned 40% of the Company and Lipsey, as President, owned the majority share, the parties dispute the degree to which Millimaki shared responsibility with Lipsey for managing the Company's pension plan. Lipsey states in his declaration that Millimaki handled 85% of the day-to-day management activities, including those relative to the pension and other incentive plans as well as accounting, budgets, payroll. Lipsey Decl. ¶¶ 8-10  Lipsey states that it was Millimaki's idea to adopt a pension plan and that Lipsey relied on Millimaki to oversee and operate the plan because he had the necessary expertise. *Id.* ¶¶ 12-13. By contrast, Millimaki states that "Lipsey and I shared equally in the management and operation of the Companies." Millimaki Decl. ¶ 5. Millimaki maintains that "at all time during the existence of the Plan, both Lipsey and I , as partners and shareholders of the Companies and on behalf of the Companies, managed

and operated the Plan. *Id.* ¶ 9.

Similarly, Eggert argues that he did not have any administrative or managerial responsibilities in his capacity as an employee of the Company. The extent to which Eggert may have managed the Plan on behalf of the Employer is not clear from the evidence submitted. *Compare* Eggert Decl. ¶¶ 4-8 *with* Lipsey Decl. ¶¶ 12-13 (Lipsey states that Eggert had extensive experience in managing pension plans, in part because he had audited pension plans for the Company's clients).

Millimaki's administrative duties as an officer of the Company, and to a lesser extent Eggert's actions as an employee, however, must be separated from the term "Administrator" as used by ERISA. The Plan Agreement allocates the powers and duties of the Administrator. Meter Decl. Ex. 4 § 2.4. The Company is the Employer, and the plan names the Employer as the "Administrator" of the plan.[3] *See* Millimaki Decl. ¶ 8.

Millimaki and Eggert argue the SAC confuses the fiduciary roles. They argue that many of the alleged breaches were duties specifically ascribed to the Plan Administrator.

This argument has no bearing on the summary judgment motion on the counter-claim for indemnity. The indemnity provision applies only to the fiduciary duties of a Trustee. The motion seeks adjudication of Millimaki's and Eggert's entitlement to contractual indemnity in the capacity as named Trustees. The SAC identifies duties that Millimaki and Eggert allegedly breached as Trustees. For example, continuing to act on behalf of the Plan after being terminated and refusing to give documents to the Successor Trustees. SAC ¶¶ 21-23; Meter Decl. Ex. 4 § 7.11(b) (Employer may remove Trustee with 30 days notice), § 7.11(d) (Employer may designate a Successor Trustee prior to removal of a Trustee, and the Successor Trustee shall be vested with all powers and responsibilities), & § 7.11(e) (when Trustee is removed, he shall furnish the Employer with a written statement of account of year to date). Whether the SAC also alleges breaches of duty that Millimaki and Eggert may have committed as "functional fiduciaries" is not

---

[3] Berman served as the third party administrator, and he signed the agreement as the pension services provider, but his role is not at issue in this motion.

relevant to this motion.

### B.  "Gross Negligence" and "Willful Misconduct" are Questions of Fact

In the heart of the summary judgment motion, Millimaki and Eggert ask the Court to find as a matter of law that they are entitled to indemnity from the Employer because they acted in good faith in their capacity as Trustees for the pension plan.  They rely on their declarations to that effect and argue that Plaintiffs have no evidence to show gross negligence or willful misconduct.

The Court denies the motion because triable issues of fact remain on whether the Trustees were simply negligent or whether they acted with gross negligence or willful misconduct.  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1105 (9th Cir 2008) (summary judgment inappropriate on whether ERISA fiduciary met prudent person standard of care); *FDIC v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1997) ("the determination of whether a party is liable for gross negligence "is a matter of fact that must be left to the determination of the reasonable persons making up the trier of fact.") (emphasis omitted); *Wells Fargo*, 860 F. Supp. at 717 (denying summary judgment motion on intent of trustee who sought indemnity for breaches of fiduciary duty).

The claim that the Trustees refused to resign and failed to promptly turn over Plan documents proves the point.  During the bitter dissolution of their long-time partnership, the parties went to court to resolve who had the right to the clients' files.  Simultaneously, the parties disputed who had the pension plan documents, who should file the tax return, and who had the right to act as Trustee.  These circumstances create a fact question as to whether the actions were based on good or bad faith.  *See FDIC*, 133 F.3d at 701 (defendant's expertise, direct involvement in making decisions, and long employment with company raised fact question of exercise of business judgment standard).  Credibility of each witness will be an important factor.  *Id.* at 700 (summary judgment was not appropriate because "witness credibility, a matter particularly within the province of the factfinder, *see Hanon v. Dataproducts Corp.,* 976 F.2d 497, 507 (9th Cir.1992), is clearly at issue, especially in view of the fact that the only evidence submitted is the testimony of the

1  defendant and of experts.").

2

3  **II.  <u>Motion for Judgment on Pleadings on Trustees' Third Party Complaint Seeking
4  Indemnification from Lipsey</u>**

5      Millimaki and Eggert filed a third party complaint against Lipsey in his individual
6  capacity.  Third Party Compl. [# 56]  They allege Lipsey must indemnify them against any
7  damages they incur in relation to the SAC in their role as Trustees on the theory that Lipsey
8  owned 60% of the Company and served as President of the Company. *Id.* ¶ 11.  The plan
9  agreement names the Employer as the Administrator.  To the extent that the SAC alleges
10 violations of the duty to administer the pension plan in accordance with ERISA, *e.g.*, SAC
11 ¶¶ 36, 67-68, 72-74, Millimaki and Eggert allege they are entitled to indemnity from Lipsey
12 for any liability arising from Lipsey's failure to administer the Plan as a co-fiduciary.
13 Third Party Compl. ¶ 20.

14     Lipsey moves for judgment on the pleadings on the ground that there is no legal
15 basis for Lipsey, as an individual, to indemnify the Plan's Trustees.  Fed. R. Civ. P. 12(c).

16     A Court may enter judgment on the pleadings when, even if all material facts in the
17 pleading are taken as true, the moving party is entitled to judgment as a matter of law.  *Hal*
18 *Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

19     In ruling on a Rule 12 motion, the Court may consider documents incorporated by
20 reference into the pleading. *Branch v. Tunnell*, 14 F.3d 4449, 454 (9th Cir. 1994).  Here,
21 the Court considers the Plan Document because the Third Party Complaint quotes it
22 extensively and relies on its terms as creating the claimants' right to indemnification.  Third
23 Party Compl. ¶¶ 6-10, 20.

24     The Court grants the motion for the reasons stated in the motion to dismiss.  The
25 right of indemnification at issue in this ERISA action derives from Plan Document.  By the
26 express terms of the Plan Document, it is the Employer who must provide indemnity.  Plan
27 Doc. § 7.13 ("<u>The Employer agrees to indemnify</u> and hold harmless the Trustee against any
28 and all claims, losses, damages, expenses and liabilities the Trustee may incur in the

exercise and performance of the Trustee's powers and duties hereunder, unless the same are determined to be due to gross negligence or willful misconduct.") (emphasis added).  The Plan Document identifies the Employer as Lipsey Millimaki and Co., Inc.  Thus, the corporate entity has the duty to indemnify.  The Trustees have not provided any authority for their bald assertion that Lipsey is personally obligated to indemnify the Trustees.

### Conclusion

Upon due consideration of the parties' memoranda and exhibits, and for the reasons set forth above, the Court hereby:

1. **DENIES** the motion for summary judgment [# 81]; and

2. **GRANTS** the motion for judgment on the pleadings on the Third Party Complaint for Indemnification.  [# 135]  The Clerk shall enter judgment in favor of Robert Lipsey on the Third Party Complaint.  [# 56]

As set forth in the separate Order on the motion to disqualify an expert witness, the parties shall contact Magistrate Judge Stormes to schedule the remaining pre-trial dates, including a mandatory settlement conference.

**IT IS SO ORDERED.**

DATED:  February 18, 2011

Hon. Michael M. Anello
United States District Judge