1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12

13   LYMS, INC.; WENDY YOUNGREN and          CASE NO.  08-CV-1210-GPC-NLS
     CATHY MEANS, as Successor Trustees Of
14   the LYMOS 401(K) Savings Plan,

15                      Plaintiffs,          **MEMORANDUM DECISION**
                  v.                         **FOLLOWING TRIAL AND ORDER FOR**
16                                           **ENTRY OF JUDGMENT**
     BRUCE MILLIMAKI and MICHAEL
17   EGGERT, Former Trustees of the LYMOS
     401(K) Savings Plan; GARY BERMAN,
18   Individually,

19                      Defendants.

20

21       **I. Introduction**

22           This case involves an accounting partnership breakup that ended much like a bad

23   divorce, with acrimony, mistrust, and years of litigation.  Plaintiffs are LYMS, Inc., the

24   sponsor of an employee pension benefit plan under ERISA ("the Plan"), and Wendy Youngren

25   and Cathy Means, the successor trustees of the Plan and certified accountants.  Plaintiffs assert

26   breach of fiduciary claims against the Plan's former trustees and certified accountants,

27   defendants Bruce Millimaki ("Millimaki") and Michael Eggert ("Eggert").  Defendant Gary

28

1

Berman ("Berman") was the third-party administrator ("TPA") for the Plan. Robert Lipsey is a certified accountant who practiced accounting with defendant Millimaki for approximately 15 years at the accounting firm Lipsey Millimaki & Co., LLP. Millimaki was general partner, officer and director with Lipsey from December 1989 until June 30, 2005.

The court conducted a seven-day bench trial from December 3 through December 12, 2012. The undisputed evidence proved a number of mistakes or omissions by each of the former trustee defendants. The principle issue includes whether the trustees' mistakes are breaches of fiduciary duty. If so, then the following issue is whether the breaches were willful so as to disqualify the trustees from being indemnified under the terms of the Plan. Finally, the question remains as to the amount of reasonable damages that may have resulted from any breaches of duty that are not subject to indemnity.

Having reviewed the evidence and the arguments of the parties, as presented at trial and in their written submissions, the Court finds that defendants Millimaki and Eggert breached fiduciary duties owed to the Plaintiffs; that the breaches caused some, but not all of the alleged damages; and that Millimaki and Eggert are not entitled to indemnity. The Plaintiffs are not entitled to declaratory relief because the matter is not ripe for the requested relief. On the counter-complaint, the Court finds against Millimaki and Eggert with respect to their claims for indemnity.

As to defendant Berman, the Court finds that the breach of contract action is barred by the statute of limitations but that Berman is liable to plaintiffs for negligence in performing his duties as TPA. The Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

**II. Procedural History**

The plaintiffs initiated this action on July 7, 2008, alleging violations of the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. §§ 1105, 1111 and 1132. ECF No. 1. They seek damages pursuant to 29 U.S.C. § 1132(a)(2) and equitable relief under 29 U.S.C. § 1132(a)(3). Jurisdiction by this court over the subject matter of this action is predicated on 28 USC § 1331. This Court has exclusive subject matter jurisdiction over these

1  claims pursuant to 29 U.S.C. §1132(e)(1).  In addition, plaintiffs allege state law claims based
2  on contract and negligence theories.

3  On July 21, 2008, Plaintiffs filed an amended complaint.  ECF No. 2.  On August 12,
4  2008, Defendant Berman answered the amended complaint.  ECF No. 11.  On August 25,
5  2008, Defendants Millimaki and Eggert answered the amended complaint, and filed a
6  counterclaim against LYMS, Inc., which alleges causes of action for breach of contract,
7  indemnity and contribution.  ECF No. 12.  On September 15, 2008, Plaintiffs answered the
8  counterclaim.  ECF No. 18.
9
10  On May 8, 2009, Plaintiffs filed a second amended complaint.  ECF No. 50.  Counts
11  One and Five are against Millimaki and Eggert and allege causes of action for breach of
12  fiduciary duty (Count One) and fraud (Count Five).  Count Two alleges a breach of fiduciary
13  duty cause of action against Millimaki.  Counts Three and Four are against Berman on causes
14  of action for breach of contract (Count Three) and negligence (Count Four).  On May 14,
15  2009, Defendant Berman answered the second amended complaint denying the material
16  allegations in the complaint.  ECF No. 49.  On June 6, 2009, Defendants Millimaki and Eggert
17  filed a third party complaint against Robert Lipsey and, shortly thereafter, filed a motion to
18  dismiss portions of Plaintiffs' second amended complaint.  ECF Nos. 56 and 58.  On August
19  25, 2009, the Court granted in part and denied in part Defendants' motion to dismiss portions
20  of Plaintiffs' second amended complaint, finding that the Plaintiffs' fraud claim (Count Five)
21  was preempted by ERISA and therefore subject to dismissal pursuant to Federal Rule of Civil
22  Procedure 12(b)(6).  ECF No. 68.  On October 15, 2009, Defendants Millimaki and Eggert
23  answered the second amended complaint.  ECF No. 70.
24
25  On February 1, 2010, Defendants Millimaki and Eggert filed a motion for summary
26  judgment.  ECF No. 81.  On March 29, 2010, Robert Lipsey filed a motion to dismiss or
27  render judgment on the pleadings of the third party complaint.  ECF No. 135.  On February 22,
28

3

2011, the Court denied Defendants' motion for summary judgment, and granted Robert Lipsey's motion for judgment on the pleadings on the third party complaint for indemnification.  ECF No. 160.

### III. Facts

This dispute arises out of the management of the Plan which is currently referred to as the LYMOS 401(k) Plan, and sponsored by LYMS, LLP.  The Plan is a tax-exempt qualified employee pension benefit plan under ERISA.  The original predecessor employer of the Plan, Robert Lipsey & Company, LLP, first adopted the Plan as the Robert Lipsey & Company 401(k) Savings Plan, effective October 1, 1991.  Pretrial Order Admitted Facts (hereinafter referred to as "Admitted Facts") at ¶ 15, ECF No. 208.  The Plan was amended in 1995 to reflect the plan sponsor, Lipsey, Millimaki & Company, Inc. and the plan name of Lipsey, Millimaki & Company, Inc. 401(k) Savings Plan.  Plan Amendment 5/24/95, Ex. 16; Resolution 5/24/95, Ex. 17.

#### A.  Creation of Plan

Robert Lipsey testified regarding the decision to adopt the Plan.  The Court finds that he was credible on matters in which he had personal knowledge.  He recounted that in 1991, his accounting firm partner Millimaki suggested that their firm should create a 401(K) plan as a good employee benefit.  Lipsey had little experience in defined benefit plans and told Millimaki that he did not want responsibility for the Plan and did not want to be a trustee or a fiduciary.  Millimaki indicated that he had significant working experience with benefit plans and he was willing to take responsibility.  Lipsey testified that both partners understood that Millimaki would be responsible for supervising lower employees regarding administration documents and forwarding documents to the third party administrator.  The record shows that Millimaki signed nearly all of the Resolutions for changes in the Plan and Amendments to the Plan on behalf of the employer and in his capacity as trustee.  Amendments and Resolutions, Exs. 16-29.  In addition, Millimaki signed some forms as the Plan Administrator.  2004 Form 5500, Ex. 30; Participant Withdrawal Form, Ex. 36 at p. 252.

After the decision to create a Plan was made, Millimaki recommended Defendant Gary

4

Berman to Lipsey as the third party administrator ("TPA") for the Plan.  Berman, doing business as L&S Pension Services, was appointed as TPA, effective October of 1991 when the Plan was adopted.  Admitted Facts at ¶ 28, ECF No. 208.  Millimaki arranged for Berman to work on referrals rather than by the task or the hour.  Lipsey agreed to this arrangement.  As TPA for the Plan, Berman prepared and created Plan documents, such as annual accounting statements, and provided administrative services to the Trustees, the Employer and Plan Administrator for operation of the Plan.  Admitted Facts at ¶¶ 28-31, ECF No. 208.  Berman served as the TPA until he was replaced by Pam Means & Associates sometime prior to July 2006. Admitted Facts at ¶¶ 28-30, ECF No. 208.

In October 1991, another accountant at the firm, Rebecca Lures, was designated as co-trustee and served in this capacity until she left the firm in approximately 1994.  Certificate of Resolution 10/9/91, Ex. 10; Adoption Agreement 10/10/91, Ex. 11.  In 1994, an Amended Adoption Agreement for the Plan was adopted and designated Millimaki as sole trustee of the Plan and the employer as the Plan Administrator.  Adoption Agreement 12/23/94, Ex. 15.  The document was executed on December 23, 1994 by Millimaki as the sole trustee of the plan and on behalf of the employer Lipsey, Millimaki & Company, Inc.

In late 1998, Lipsey and Millimaki asked Eggert to assume the role as a co-trustee.  Eggert testified that he was reluctant to accept responsibility.  Lipsey and Millimaki assured Eggert that his role would be limited as a backup and further that he would be protected under the indemnity provision in the Plan.  After considering the request over the weekend, Eggert accepted the role as co-trustee and he was designated co-trustee on December 14, 1998.  Plan Amendment 12/14/98, Ex. 19.

The Plan provides that absent an appointment of an administrator, the employer is the plan administrator.  Plan § 2.2, Ex. 2.  Under the Plan, an administrator's primary responsibility is to administer the Plan for the exclusive benefit of the Participants and their Beneficiaries.  Plan § 2.4, Ex. 2.  The Administrator is charged with duties and powers, including "the discretion to determine all questions relating to the eligibility of an Employee to participate or remain a Participant hereunder and to receive benefits under the Plan," and "to

maintain all necessary records for the administration of the plan." Plan § 2.4(a) and (e), Ex. 2.

The Plan further provides that the employer is empowered to appoint a trustee for the plan. Plan § 2(a), Ex. 2. Under § 7.2(a) of the Plan, a "trustee has the discretion and authority to invest, manage and control those Plan assets, except, however, with respect to those assets which are subject to the investment direction of a Participant…" Plan § 7.2(a), Ex. 2. A trustee "may refuse to comply with any direction from the participant in the event the Trustee, in its sole and absolute discretion, deems such direction improper by virtue of applicable law. The Trustee shall not be responsible or liable for any loss or expense that may result from the Trustee's refusal or failure to comply with any direction from the Participant." Plan § 7.1(d), Ex. 2. In addition, a Trustee is required to "maintain records of receipts and disbursements and furnish to the Employer/and/or Administrator for each Plan Year a written annual report pursuant to Section 7.9." Plan § 7.1(e), Ex. 2.

**B. Millimaki's Disassociation from the Firm**

In December 2004, Millimaki advised Lipsey of his intent to disassociate from the firm the following year. In approximately May 2005, the firm informed the employees of the disassociation and permitted employees to choose to stay behind with Lipsey or leave with Millimaki. Eggert was one of seven employees who left with Millimaki. According to Millimaki, the acrimony between them began after seven employees elected to follow Millimaki to his new firm.

Berman testified at trial. The Court finds that Berman was generally credible except as otherwise indicated in the decision. Berman testified that when he learned of the planned disassociation, he sat down with Lipsey and Millimaki and suggested that they work together for a smooth transition. Email 5/17/05, Ex. CF. Such a suggested meeting never took place and no agreement was in place to divide the firm's work or permit an orderly transition to successor trustees for the Plan. As a result, a dispute arose almost immediately regarding Millimaki's efforts to obtain client files. Lipsey took the position that the firm could not release files to Millimaki for a period of four years. Following the dispute, on June 17, 2005, Bruce Millimaki filed a complaint for dissolution of Lipsey Millimaki & Co., LLP, in the

1    California Superior Court.  Complaint for Dissolution, Ex. 198.  In the state action, LYMS was

2    represented by the firm Solomon Ward and Robert Lipsey was represented by attorney

3    William Calderelli.

4         On June 27, 2005, Robert Lipsey changed the company's name from Lipsey Millimaki

5    & Co., LLP to Lipsey Youngren Means and Sandberg CPAs, LLP ("LYMS") and the Plan was

6    amended to change the name of the Plan to the "Lipsey Youngren Means & Sandberg CPA's ,

7    LLP 401(K) Savings Plan."  Amendment 6/27/05, Ex. 3.  Plaintiffs Cathy Means and Wendy

8    Youngren were named general partners in the new firm and appointed as successor trustees of

9    the Plan in place of Eggert and Millimaki.  Id.  On June 30, 2005, Defendants Millimaki and

10   Eggert formed a separate company, the Millimaki Eggert firm.  After Millimaki Eggert was

11   formed, Berman established a retirement plan for Millimaki Eggert and acted as third-party

12   administrator for the newly created plan.   Based on the departure of Millimaki and the other

13   former Lipsey Millimaki employees, a partial termination of the Plan occurred.

14        **C. Post-Disassociation Control of Plan**

15        On July 8, 2005, Eggert directed an email to Berman and Cathy Means, among others,

16   stating that Millimaki and Eggert were still the only trustees of the Lipsey, Millimaki & Co.

17   Plan and would remain the sole trustees until all of the assets were transferred to their new

18   plan.  Email 7/8/05, Ex. 73.  On July 21, 2005, LYMS provided Millimaki and Eggert written

19   30-day notice, under § 7.11(b) of the Plan, that that they were terminated as trustees of the

20   Plan.  Notice of Removal, Ex. 112.  Based upon service of the notice on July 26, 2005, the

21   termination date became effective on August 25, 2005.  Id.  The termination notice also

22   specified that Millimaki and Eggert were required to return all Plan documents and records and

23   provide the successor trustees with a final trust accounting of the Plan's assets.  Id.  Under ¶

24   7.11(e) of the Plan, a removed trustee is required to prepare a statement of account no later

25   than the due date of the annual statement.  Millimaki and Eggert did not provide a statement of

26   account.

27        Following their removal as trustees for the Plan, Defendants Millimaki and Eggert

28   continued to act as Plan trustees by engaging in oversight of the Plan and signing and filing

7

forms for the IRS, including the Form 5500 for the Plan.  E.g., Admitted Facts at ¶ 45, ECF

No. 208.  As of February 2006, Millimaki and Eggert had yet to authorize the release of Plan

brokerage statements to the Plaintiffs.  Charles Schwab Documents, Ex.143.  On August 17,

2006, Plaintiffs submitted the necessary paperwork to update the change in Plan name and the

change in Trustees from Millimaki and Eggert to Kathy Means and Wendy Youngren.  Letter

to Schwab 8/17/06. Ex. 144.

### D.  Search for Plan Records

After Millimaki and Eggert refused to relinquish their roles as trustees in August 2005,

the Plaintiffs sought to obtain Plan documents in order to evaluate the status of the Plan and its

compliance with applicable law.  Plaintiffs encountered difficulties and challenges in obtaining

Plan documents.

On August 22, 2005, in response to a request by Lipsey for an accounting of the Plan,

Berman replied that he would mail a summary of accounts from 1996 through 2004.  Email

8/22/05, Ex. 83.  Berman further stated that he was unsure if he had all records for the early

years since the Lipsey firm had always provided year-end statements.  Id.  In an email dated

July 26, 2005, Eggert responded to a request for plan documents from James Grutkowski and

indicated that he understood that LYMS had taken control of Lipsey, Millimaki & Co.

checking accounts, payroll records, and accounting records.  Email 7/26/05, Ex. 86A-12.

In March 2006, the parties reached a draft settlement agreement in the state court

dissolution action which provided, among other things, for Millimaki and Eggert to turn over

all Plan accounting records and documents obtained in their capacity as trustees and to stop

representing the Plan.  Lipsey conditioned his signature of the settlement on receipt of the

requested documents.  In April 2006, Millimaki produced a large number of brokerage

statements for the period of 2000 through early 2006.  Email 04/09/06 and Brokerage

Statements, Ex. 130.  In addition, Berman located and provided to Lipsey most of the

documents from 1996 through 2004 relating to the plan approval, annual administration and

trust accounting. Letter 4/3/06, Ex. G; Letter 3/27/06, Ex. I.  Ultimately, Lipsey was not

satisfied that Millimaki and Eggert had provided all Plan documents as promised and refused

8

to enter the settlement.  Meanwhile, Millimaki and Eggert testified that they turned over all documents within their control.  In addition, Millimaki testified that a number of Plan documents were maintained at the Lipsey accounting offices and were unavailable after Millimaki left the firm.

Lipsey testified that when he was unable to retrieve all Plan records, he became concerned with issues regarding status and ERISA compliance.  After the dissolution settlement agreement failed in March 2006, LYMS and the Plan's Successor Trustees, Plaintiffs Cathy Means and Wendy Youngren, attempted to evaluate the status of the Plan, its accounting records, and its compliance with applicable laws and regulations.  In March 2006, LYMS retained Means & Associates headed by Pam Means (no relation to Cathy Means) to conduct a preliminary document review for the Plan.  According to Pam Means' testimony, the review would ensure that the Plaintiffs had all required documentation to support any 3rd party examination of the Plan and make sure that the plan documents were complete, including all required amendments.  Email 5/5/06, Ex. 96.  On April 18, 2006, Means & Associates issued a preliminary report regarding the Plan.  Preliminary Compliance Review Letter, Ex. 46.  In the report, Pam Means identified a number of action items consisting of missing documents.  Id. Among the missing documents were ones regarding a rollover involving a former employee Mark Schaim (the "Schaim rollover") where a $470,000 distribution did not match the amount rolled into the account.  Id.

On May 11, 2006, Plaintiff Cathy Means emailed Berman to inquire whether he had had an opportunity to respond to the action items on the list provided by Means & Co.  Email 5/17/06, Ex. 97.  On May 17, 2006, Berman promised a package with supporting documents or explanations for the "action" items.  Id.  On June 6, 2006, Berman emailed Mark Schaim requesting any documentation for the subject rollover.  Email 6/6/06, Ex. 98.  On July 6, 2006, Berman emailed Cathy Means and provided available information for the Schaim rollover and revealed that he "was never aware of this outside investment until recently." Email 7/6/06, Ex. 101-4.

Berman testified at trial that he believed Millimaki had provided him with the Schaim

9

rollover information at the time that it was admitted into the Plan.  However, the July 6, 2006 email from Berman to Cathy Means contradicts the testimony and indicates that Millimaki and Eggert did not provide Berman with the Schaim rollover information at the time that it was received.  Id.  Berman also noted in a June 14, 2006 email that his practice was to have the client review the allocations for a year to ensure the reports contained correct information. Email 6/24/06, Ex. 113.  The Court finds that Millimaki and Eggert failed to provide the Schaim rollover information to Berman and further failed to properly disclose the transaction on reporting forms.

The evidence shows that Plaintiffs contacted Schaim on July 6, 2006 in order to reconstruct the records regarding the rollover.  Email 7/13/06, Ex. 118.  Lipsey observed that the records were needed in order to determine whether the rollover was proper from the inception.  Id.

**E. Schaim Rollover and Investments**

Following numerous efforts to locate Schaim rollover documents, Plaintiffs obtained a number of records that Pam Means reviewed to evaluate the Schaim transactions.  On August 4, 2006, Pam Means reported a number of problems, inconsistencies and omissions regarding the Schaim transactions.  Email 8/4/06, Ex. 106.  The available records revealed that in January 2000, Mark Schaim, formerly associated with Soloman Schaim & Remmes, joined Lipsey, Millimaki & Co.  Mark Schaim was employed by Lipsey Millimaki & Co. from 2000 until 2004.  In 2001, Schaim took a $342,714 distribution from the Soloman Schaim & Remmes 401k plan. Approximately $187,666 of that Schaim distribution from the Soloman Schaim & Remmes 401k plan was rolled into the Plan.

Thereafter, on June 27, 2002, Eggert signed a subscription agreement for a $100,000 investment in the Judd and Dillard Otay, LP, real estate investment on behalf of the Plan, for the benefit of (FBO) Mark Schaim.  Subscription Agreement, Ex. 168.  Both Millimaki and Eggert authorized the transfer of funds into the Judd and Dillard Otay account.  Letter of Authorization, Ex. 162.  This investment was not reported on the Plan's 2002 IRS Form 5500. 2002 Form 5500, Ex. 183.  The Judd and Dillard Otay, LP real estate investment was re-sold

10

on or about July 15, 2003 for $17,000,000 with a taxable gain of $9,450,005.  2003 Form 1065, Ex.168-9.  From the gain, $251,641 was distributed to the Plan, FBO Mark Schaim. 2003 Sch. K, Ex. 168-10.  The IRS Form 5500 for Plan Year 2003 filed on the Plan's behalf does not list any limited partnership interest, nor did it include the taxable gain on this sale attributable to Schaim's LP interest in the amount of $159,726.00. 2003 Form 5500, Ex. 184.

On October 31, 2003, Millimaki signed a subscription agreement for a $250,000 investment in Judd and Dillard 310, LLC real estate investment on behalf of the Plan, FBO Mark Schaim.  Subscription Agreement and Transfer Authorization, Ex. 168-13.  Millimaki wire transferred $250,000 from the Plan's FBO Mark Schaim account at Charles Schwab to Judd and Dillard 310, LLC based on an authorization signed by both Millimaki and Eggert. Id.  The IRS Form 5500 later filed on behalf of Plan for 2003 did not list any membership investment in a LLC. 2003 Form 5500, Ex. 184. The Judd and Dillard 310, LLC offering materials stated that the entity would raise investor capital and borrow up to $7.5 million from lenders to finance a real estate purchase, and that the business plan was to hold the property for as short a period as possible and resell it.

In June 2004, Schaim left Lipsey Millimaki & Co. to form Schaim Hyde & Co.  In January 2005, Schaim changed the name of investment in Judd and Dillard 310, LLC, from Lipsey Millimaki & Co. 401k Plan, FBO Mark Schaim, to Schaim Hyde & Co. 401k Plan, FBO Mark Schaim.  Subsequently, the Plan issued an IRS Form 1099R for tax year 2005 to Mark Schaim, reporting a $474,808 distribution from the Plan to Schaim (as a roll-over to Schaim Hyde & Co 401k Plan).

Alex Brucker, the Plaintiffs' expert regarding the fiduciary duty issues before the Court, opined that questions remain as to whether the Schaim rollover investments in real estate are subject to unrelated business tax under § 511 of the Internal Revenue Code.  Brucker Report at pp. 11-12, Ex. 192.

The Court finds that Millimaki and Eggert accepted the Schaim rollover without adequate inquiry or analysis of the unrelated business taxable income issues related to the rollover investments.  In addition, Millimaki and Eggert failed to provide material information

11

regarding the Schaim rollover to the TPA.  Finally, the legal issues relating to the Schaim rollover are significant and have the potential of resulting in enforcement actions against the Plan by the Internal Revenue Service.

///

### F.  VCP

On June 8, 2006, Means & Associates Co. issued a Fiduciary Compliance report to LYMS that detailed problems and operational failures with the Plan.  Fiduciary Compliance Review letter, Ex. 45.  Thereafter, Plaintiffs engaged Means & Associates, and Branton & Wilson, attorneys, as consultants and legal advisors to assess the plan and to pursue a voluntary correction program ("VCP") for submission to the IRS. The VCP, as part of the Internal Revenue Service Employee Plans Compliance Resolution System ("EPCRS"), is designed to permit Plan Sponsors to self-correct plan documents and plan operational errors and maintain tax favored status.

LYMS and the Successor Trustees of the Plan worked with their ERISA consultants and attorneys to finalize and file a VCP submission to the Internal Revenue Service ("IRS"). Plaintiffs' testimony revealed that the VCP submission was a difficult, time-consuming task. The VCP submission was made on October 11, 2006. VCP cover letter and exhibits, Ex. 36. Plaintiffs paid $1,300 in fees to the IRS for the VCP.  Admitted Facts at ¶ 58, ECF No. 208.

After review of the VCP submission, the IRS issued a Compliance Statement dated September 28, 2007.  VCP Compliance Statement 9/29/07, Ex. 61.  The Compliance Statement (favorable determination) conditioned the ongoing tax-qualification of the Plan upon a complete restatement of the Plan documents as well as the completion of certain corrective actions, and identified a number of problems, including violations of a number of provisions of the Internal Revenue Code, as well as the terms of the Plan itself, *viz.:*

(a)     Failing to provide documents correctly identifying the proper Employer under the Plan (See EGTRRA Amendment, Ex. 26, Post-EGTRRA Amendment, Ex. 29);

(b)     Allowing ineligible employees – including Millimaki's wife – to participate in the Plan;

12

1    (c)    Failing to meet contribution testing requirements governing highly compensated

2            employees in all five years tested (1997 through 2001), resulting in excess

3            contributions totaling $22,220.80 for the years in question, and requiring the Company

4            to make an additional contribution in that amount for its non-highly compensated

5            employees within 150 days of receipt of the IRS Compliance Statement; and

6    (d)    Allowing plan participants to exceed maximum income deferral levels for the

7            years 1996 through 2001.  Admitted Facts at ¶ 53, ECF No. 208.

8            As a result of the VCP submission, in addition to the corrections proposed in the

9    original submission, the Employer was required to contribute $22,220.80 for the years in

10   question for its non-highly compensated employees for the ADP failures within 150 days of

11   the VCP. Admitted Facts at ¶ 54, ECF 208.  As previously stated Plaintiffs also paid a $1,300

12   fee to the IRS in connection with the VCP submission.  Admitted Facts at ¶ 58, ECF No. 208.

13           The VCP Compliance Statement did not directly address the "Schaim Transaction," but

14   provided that the Compliance Statement does not constitute a determination that the Plan was

15   not "a party to an abusive tax avoidance transaction."  VCP Compliance Statement, Ex. 61.

16   Lipsey testified that he understood that based on the qualifying language, the IRS left open

17   possible disqualification of the Plan.

18   **IV. Discussion**

19       **A.   First Cause of Action (ERISA)**

20           In an ERISA action under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), relief is provided

21   under 29 U.S.C. §1109(a), which states:

22           Any person who is a fiduciary with respect to a plan who breaches any
             of the responsibilities, obligations, or duties imposed upon fiduciaries
23           by this subchapter shall be personally liable to make good to such plan
             any losses to the plan resulting from each such breach, and to restore to
24           such plan any profits of such fiduciary which have been made through
             use of assets of the plan by the fiduciary, and shall be subject to such
25           other equitable or remedial relief as the court may deem appropriate,
             including removal of such fiduciary. A fiduciary may also be removed
26           for a violation of section 1111 of this title.

27           ERISA imposes high standards of fiduciary duty upon those responsible for

28

13

administering an ERISA plan, including prudent management of the plan's assets and defraying reasonable expenses of administering the plan. 29 U.S.C. § 1104(a)(1) and (2); Eaves v. Penn, 587 F.2d 453 (10th Cir. 1978).  To state a claim for breach of fiduciary duty under ERISA, Plaintiffs must establish that (1) Defendants were Plan fiduciaries, (2) Defendants breached their fiduciary duties, and (3) the breach caused harm to the Plaintiffs. Brosted v. Unum Life Ins. Co., 421 F.3d 459, 465 (7th Cir. 2005) (citing Kamler v. H/N Telecomm. Serv., Inc., 305 F.3d 672, 681 (7th Cir. 2002)).

### 1. Defendants Millimaki and Eggert Were Plan Fiduciaries.

Plaintiffs claim that Millimaki and Eggert were fiduciaries as a result of their position as trustees and their actions as functional administrators.  Millimaki and Eggert counter that they were simply trustees and did not function as administrators for the Plan.  The Court finds that Millimaki and Eggert were fiduciaries in their capacity as trustees and functional administrators in their approval of the Schaim rollover into the Plan.  In addition, Millimaki was a functional administrator in the management of the Plan.

Each employee benefit plan subject to ERISA must identify a "named fiduciary" directly in the plan document or through a procedure established and set forth in the plan document.  29 U.S.C. § 1102(a).  The person who is named fiduciary is a fiduciary for all purposes of the plan whereas a person who is a fiduciary solely as a result of the functions performed is a fiduciary only to the extent that it satisfies the designated functional requirement.  See Gelardi v. Pertec Computer Corp., 761 F.2d 1323 (9th Cir. 1985) (although employer was a fiduciary with respect to appointment of plan administrator, it was not fiduciary with respect to actual administration of plan); Brandt v. Grounds, 687 F.2d 895 (7th Cir. 1982) (fiduciary status only to the extent it rendered investment advice, because person was not named a fiduciary).  The mere existence of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status.  Gomez-Gonzalez v. Rural Opportunities, Inc. 626 F.3d 654 (1st Cir. 2010).

Under ERISA, a functional analysis is required to determine fiduciary status.  The three functional tests required to determine a person's fiduciary status include: (1) the exercise of any discretionary authority or discretionary control with respect to the management of the plan

14

or its assets; (2) having the authority, responsibility, or actually rendering investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan; or (3) having any discretionary authority or discretionary responsibility in the administration of the plan. 29 U.S.C. § 1002(21)(A).  Whether someone is an ERISA fiduciary is a factually intensive determination.  Steen v. John Hancock Life Ins. Co., 106 F.3d 904, 913 (9th Cir. 1997).

In Kenseth v. Dean Health Plan, Inc., 610 F.3d 452 (7th Cir. 2010), the Court held that an ERISA health insurance plan administrator was a fiduciary when it possessed discretion to construe and apply provisions of the plan and authority to assess a participant's entitlement to benefits.  Similarly, in Smith v. Medical Benefit Administrators Group, Inc. 639 F.3d 277 (7th Cir. 2011), the Court found that a third-party medical claims administrator for an employer's health plan breached its fiduciary duty in denying a participant's claim because it had the power to grant or deny a participant's claim for health insurance benefits.  Meanwhile, in Arakelian v. National Western Life Insurance Company, 680 F.Supp.400 (D.D.C. 1987), the Court found that trustees under a plan were not fiduciaries as far as certain investment decisions where the plan instrument did not accord the trustees any discretionary authority related to the type of required investments.

In this case, the plan instrument provides that absent an appointment of an administrator, the employer is the plan administrator.  Plan § 2.2, Ex. 2.  Under the Plan, the administrator is charged with duties and powers, including "the discretion to determine all questions relating to the eligibility of an Employee to participate or remain a Participant hereunder and to receive benefits under the Plan," and "to maintain all necessary records for the administration of the plan." Plan §§ 2.4(a) and (e), Ex. 2.  The Court finds that Millimaki and Eggert were not expressly appointed administrators under the Plan and that, as a starting point, the employer was the administrator under the Plan.

The Plan provides that the employer is empowered to appoint a trustee for the plan. Plan § 2(a), Ex. 2.  From the commencement of the Plan in 1991, Millimaki was a named trustee of the Plan, and also responsible for the management and supervision of the Plan on behalf of the Employer/Sponsor.  After joining Lipsey, Millimaki & Company, Defendant

15

Eggert was appointed a co-trustee of the Plan in December of 1998.  Under Plan § 7.1(e), a Trustee is required to "maintain records of receipts and disbursements and furnish to the Employer/and/or Administrator for each Plan Year a written annual report pursuant to Section 7.9."  A trustee "may refuse to comply with any direction from the participant in the event the Trustee, in its sole and absolute discretion, deems such direction improper by virtue of applicable law.  The Trustee shall not be responsible or liable for any loss or expense that may result from the Trustee's refusal or failure to comply with any direction from the Participant."  Plan § 7.1(d), Ex. 2.

As trustees of the Plan, Defendants Millimaki and Eggert were responsible for maintaining records of receipts and disbursements, and furnishing annual reports.  In addition to these trustee obligations, Millimaki and Eggert approved and signed documents relating to the Schaim rollover and investments.  Millimaki and Eggert had the discretion to reject the Schaim rollover transaction.  In determining the eligibility of the Schaim rollover, Millimaki and Eggert acted as functional administrators in making a determination on the eligibility of the Schaim rollover.  In so doing, they owed a fiduciary duty to the Plan and its members.

In the case of Millimaki, he was also a functional administrator for the Plan in its day-to-day operations, including the approval of participants, investments, and contributions.  Millimaki assumed this responsibility in administering it on behalf of the employer.  Millimaki was the driving force behind the creation of the Plan and assured Lipsey that he was experienced in overseeing benefit plans and prepared to ensure that the Plan operated properly.  Millimaki located Berman to be the third party administrator and arranged for work referrals in lieu of compensation arrangement.  From the inception of the Plan through 2005, Millimaki communicated directly with the TPA and plan participants; exerted discretionary authority by authorizing the Schaim rollover and related transactions; signed the original Plan documents, amendments and resolutions, and executed a Form 5500 under oath as plan administrator and plan sponsor.  See Amendments and Resolutions, Exs. 16-29; 2004 Form 5500, Ex. 30.

In short, given the level of involvement in creating and maintaining the Plan and exercising key decisions regarding the Plan, Millimaki's actions establish a fiduciary duty under ERISA as a functional administrator.  The Court finds that Millimaki acted in his

16

capacity as functional administrator in allowing an ineligible employee to participate in the Plan, approving plan participants to exceed maximum income deferral levels for the years 1996 through 2001, approving Plan documents which misidentified the participating employer, and failing to maintain all necessary records for the administration of the Plan.

### 2.   Defendants breached their fiduciary duties.

As fiduciaries, Defendants Millimaki and Eggert owed the plan and the beneficiaries duties of trust, loyalty and due care.  The law utilizes a prudent person standard, and requires the fiduciary to act with the care, skill, prudence, and diligence under the circumstances. 29 U.S.C. §1104(a)(1)(B).  As a co-trustee, Eggert had a duty to monitor the conduct of another trustee and intervene if he suspected improprieties.  Pension Ben. Guar. Corp. v. Greene, 570 F. Supp. 1483, 1487 (W.D.Pa.1983) (trustee resignation valid only when he has made adequate provision for continued prudent management of assets).

In this case, Millimaki and Eggert jointly breached their fiduciary duties by (1) permitting the Schaim rollover to be admitted into the Plan without proper review by the TPA; (2) refusing to step down as trustee following removal by the Plan, and (3) delaying the production of available records and documents.

### a.   Schaim Rollover

Defendants Millimaki and Eggert failed to act with care, prudence and diligence in their capacity as trustees and functional fiduciaries in dealing with the Schaim rollover.  The evidence shows that both Millimaki and Eggert approved the rollover into the Plan and disbursements from the Plan.  Under § 7.1 of the Plan, a trustee has discretion to reject outside investments if inconsistent with the law.  Millimaki was advised to consult with an attorney regarding tax consequences of participating in the investment and acknowledged that as a subscriber would look solely to his advisors with respect to the investment.  Subscription Agreement and Wire Transfer Authorization at §§ 4(r) and (s), Ex.168-13.  The Court finds that Millimaki or Eggert failed to provide TPA Berman with any documentation of the Schaim investment prior to the rollover so that the TPA could determine the eligibility of the rollover and report the acceptance of the rollover.  Given these facts, Millimaki and Eggert cannot rely on the advice of the TPA regarding their failure to investigate possible unrelated business

17

income created by the Schaim transactions.   As a result of the breaches of fiduciary duty, the Plan was required to conduct an investigation to obtain necessary supporting documentation, and conduct a review of the Schaim transactions.

### b.  Failure to Step Aside as Trustees

The evidence shows that on July 8, 2005 Eggert emailed Cathy Means, Berman and broker Bob LaCoix and advised them that Millimaki and Eggert were the only trustees and would remain such until all of their assets were transferred out of plan.  Email 7/8/05, Ex. 73. On July 21, 2005, Millimaki and Eggert were replaced as trustees under the terms of the Plan effective August 25, 2005.  Notice of Removal, Ex. 112.  In spite of their replacement, Millimaki and Eggert denied the successor trustees' access to brokerage statements and continued to act on behalf of the Plan.  However, no express or implied provision in the Plan allowed for a holdover. Accordingly, Millimaki and Eggert's refusal to relinquish control was without legal authority.  The unjustified holdover demonstrates a lack of diligence, care and prudence and constitutes a breach of fiduciary duty owed by Millimaki and Eggert.  The trustees' refusal to step aside delayed the turnover of available brokerage statements and a review of the Plan's compliance with applicable laws.  The delay contributed to the need for Plaintiffs to take investigative steps to obtain Plan documents.

### c.  Delay in Providing Available Records

Millimaki and Eggert were required to turn over any Plan documents after they were removed as trustees in August 2005.  They failed to produce the documents, despite the fact that they had access and control to those documents at the time.  Undoubtedly, the conflict created by the ongoing state court litigation prevented any cooperation between the parties. The evidence further showed that there was no centralized repository for Plan records. Instead, Plan documents were scattered between the Millimaki, Eggert, Berman, investment brokers, and the Plan sponsor.  The undisputed evidence shows that as of March 2006, Millimaki and Eggert were negotiating the return of Plan documents.  The Court finds that the failure to turn over available documents in August 2005 constitutes a breach of fiduciary duty.

1    In addition to failing to produce documents that they maintained and controlled, the

2    Court finds that Millimaki and Eggert failed to maintain records relating to the Schaim

3    rollover.  In making this finding, the Court rejects Plaintiffs' claim that the Schaim records

4    were withheld to conceal any information of Plan mismanagement.  However, the withholding

5    was willful and without legal justification.

6    **d.  Ineligible participants and excessive maximum income deferral**

7    **levels**

8    As a functional administrator responsible for the administration and application of the

9    Plan, Millimaki was required to act prudently in the administration of the Plan.  Plaintiffs

10   contend that Millimaki breached his fiduciary duty by approving the errors that required the

11   VCP.  The question is whether Plaintiffs have shown that Millimaki deviated from the

12   standard of care in monitoring the TPA, and approving the complained of actions. This

13   requires a review of the complained of actions or omissions.

14   **i.  Approval of documents misidentifying the proper Employer**

15   On January 8, 2001, the Plan was amended to add a new participating employer

16   effective January 1, 2000, Lipsey, Millimaki & Co. CPAs LLP ("LM Partnership").

17   Thereafter, on February 18, 2002, the Plan was amended to comply with changes in the

18   applicable law. The adoption agreement failed to identify LM Partnership, as an adopting or

19   participating employer.  Berman acknowledged that it was error to exclude the LM Partnership

20   and that the effect of the error was to delete the LM partnership from the Plan.   Millimaki

21   signed a number of documents that evidenced this error.  See EGTRRA Amendment, Ex.26;

22   Post-EGTRRA Amendment, Ex. 29.

23   The Court finds that Millimaki deviated from the applicable standard of care in failing

24   to recognize this basic error.  Millimaki, as a partner in the LM Partnership and trustee for the

25   Plan, was aware of the information which would have alerted him that the misidentification of

26   the participating employer had occurred.  There was no justification in permitting the adoption

27   agreement and amendments to make this error.

28   While the error may be dismissed by the defendants as inconsequential, the IRS has

19

1  taken the position that any errors in the operation of a plan or form of plan documentation, no

2  matter how insubstantial or innocent the mistake is, may result in plan disqualification.  IRS

3  Field Serv. Adv. 1999-636.

4          **ii.**       **Allowing ineligible employees to participate in the Plan**

5        The Plan provided for service eligibility requirements of one year.  In this case, Linda

6  Millimaki, Bruce Millimaki's wife, was allowed to participate in the Plan prior to the one year

7  period in violation of the Plan.  Millimaki signed the Plan documents which established the

8  one year eligibility, and was married to the early participant.  The Court finds that Millimaki

9  approved this error in his capacity as functional administrator and that it constitutes a breach of

10  fiduciary duty as the functional administrator.

11          **iii.**      **Failing to meet contribution testing requirements**

12        The Plaintiffs allege that Millimaki breached his fiduciary duty by failing to correct

13  errors made by Berman in contribution testing.  A breach of fiduciary duty does not utilize

14  strict liability principles.  Mistakes in the contribution testing does not automatically equate to

15  a breach of fiduciary duty.  There is no evidence as to how and why Millimaki failed to use

16  reasonable prudence under the circumstances.  Cf., Howard v. Shay, 100 F.3d 1484 (9th Cir.

17  1996) (fiduciary agreed in advance to rely on valuation report without careful review of the

18  report); Christensen v. Qwest Pension Plan, 462 F.3d 913, 917-918 (8th Cir. 2006); 29 CFR §

19  2509.75-8.  The Court finds that Millimaki reasonably relied on Berman's work in performing

20  the contribution testing and that there was no reason for Millimaki to challenge Berman's

21  work at the time of the testing.  Accordingly, Millimaki did not breach his fiduciary duty as

22  functional administrator in regards to the failure to meet contribution testing requirements.

23          **iv.**      **Allowing plan participants to exceed maximum income deferral**

24                       **levels**

25        As in the case of contribution testing errors, the Court finds insufficient evidence to

26  establish that Millimaki should have taken additional steps to determine if participants had

27  exceeded maximum income deferral levels.  Plaintiffs have not pointed to evidence that would

28  have alerted Millimaki to the need for a second opinion on the income deferral levels.

**e. Remaining Claimed Breaches of Fiduciary Duty**

In addition to the aforementioned alleged breach of fiduciary duties, Plaintiffs argue that Millimaki breached his fiduciary duty to the Plan based on his hiring of Berman as a third-party administrator without a contract and with an alleged conflict.  However, the evidence shows that Lipsey agreed to Berman being retained without a contract on a referral basis.  The Court finds that Millimaki's actions in suggesting Berman as TPA and the compensation arrangement did not constitute a breach of fiduciary duty.

Plaintiffs also allege that Millimaki and Berman breached their fiduciary duties by failing to maintain error and omissions insurance for the benefit of the plan and participants. The Court finds that the Plaintiffs have failed to prove that Millimaki and Eggert had the duty under the Plan or under ERISA law to obtain insurance.

**B. Second Cause of Action (ERISA)**

Plaintiffs seek further relief against Millimaki as the Administrator under 29 U.S.C. §1132(a)(3), which provides:

> A civil action may be brought…(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

In Varity Corp. v. Howe, 516 U.S. 489, 515 (1996), the Supreme Court held that 29 U.S.C. §1132(a)(3) authorizes ERISA beneficiaries to bring lawsuits for " 'appropriate' equitable relief" for breach of fiduciary obligations, where ERISA does not "elsewhere provide [] adequate relief for a beneficiary's injury."  Id.  It is expected "that courts, in fashioning 'appropriate' equitable relief, will keep in mind the special nature and purpose of employee benefit plans."  Id.  Section 1132(a)(3) is "a 'catchall provision, which provides relief only for injuries that are not otherwise adequately provided for."  Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997) (citing Varity Corp., 516 U.S. at 512.)

Plaintiffs seek declaratory judgment against Defendants in the event an IRS audit or other investigation arises from the Schaim Transaction.  Plaintiffs request that Defendants

MEMORANDUM DECISION FOLLOWING TRIAL

must indemnify the Plan, successor trustees and the Employer for all costs they incur due to audits by IRS, Franchise Tax Board (California) or United States Department of Labor, and in which the Plan is proposed to be either disqualified, subjected to UBIT or other taxes, penalties and interest, or any other adverse actions which actions relate to all plan years from inception until June 30, 2006, the date that defendants no longer retained (unauthorized) control over the plan records.  Plaintiffs point to the IRS favorable determination letter regarding the VCP submission, in which the IRS found that the proposed remedies were appropriate for the several identified failures.  In finding the plan compliant, the IRS further stated that it "does not express an opinion as to the accuracy or acceptability of any calculations or other material submitted with the application.  In no event may this compliance statement be relied on for the purpose of concluding that the Plan or Plan Sponsor was not a party to an abusive tax avoidance transaction."  Ex. 61.  Plaintiffs interpret this language as indicative of a potential future IRS audit to investigate the Schaim transaction, and that the audit could lead to a negative finding that would put the entire retirement plan at risk.  Relief in the form of a declaration, Plaintiffs contend, is needed to indemnify the plan participants from any negative IRS findings as a result of the Defendants' mismanagement of the plan.

The Court finds that this claim is unripe for adjudication.  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580–81 (1985)).  Ripeness "requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967).  As to the fitness of the issues, there has been little evidence presented that would lead the Court to believe that an IRS audit would ever take place.  The fact that the IRS declined to make a determination as to whether certain transactions constituted abusive tax avoidance does not mean that the IRS will make that determination in the future.  The IRS sent the compliance letter in September 2007, and there has been no indication that the IRS intends to follow up on the plan failures.  Even if an IRS audit were to take place, Plaintiffs presented insufficient evidence that would lead the Court to believe that a negative finding would cause

22

harm to the plan or plan beneficiaries.  Although the Court has found that Millimaki's failures resulted in a breach of his fiduciary duties as an Administrator, the relief sought by Plaintiffs regarding the potential harm to the plan is too speculative.  Furthermore, Plaintiffs will not suffer undue hardship without the relief of a declaration at this time.  Given that there is no current harm, there is no hardship.  Plaintiffs may seek relief at the appropriate time – that is, if an IRS audit occurs and causes harm to the plan or plan beneficiaries.  At this point, the Court declines to provide Plaintiffs with the relief of a declaratory statement for a speculative claim that relies upon future events that may or may not occur.

### C.  Third Cause of Action (Breach of Contract)

Plaintiffs assert that Berman breached a contractual obligation owed to the Plaintiffs. Plaintiffs acknowledge a contract between the Plan and Berman was never memorialized.  The Plaintiffs failed to establish the terms of the contract.  The most recent alleged defect in the claim for breach of contract is for the 2005 Plan year and occurred prior to June 2006.  The complaint was filed on July 7, 2008.

The California Code of Civil Procedure § 339 applies in this action and provides a two-year statute of limitations.  The Court finds that any contract based claim is barred by the California statute of limitations.

### D. Fourth Cause of Action (Negligence)

State tort law applies to claims against Berman for his role as third party plan administrator.   Negligence claims in California require that Plaintiffs prove that Berman owed a legal duty to Plaintiffs, that he breached that duty, that Plaintiffs were injured, and damages were proximately caused.  Hoyem v. Manhattan Beach City School District (1978) 22 Cal. 3d 507, 513; Berkley v. Dowds (2007) 152 Cal. App. 4th 518, 526.   Under California law, a professional is required to make reasonable use of his superior knowledge, skills and experience within his area of expertise.  KPFF v. California Union Ins. Co. 56 Cal. App. 4th 963, 974 (1997).

Plaintiffs contend that Berman was negligent in three ways: (1) maintaining incomplete records, (2) filing erroneous information returns with the IRS for most years, and (3) participating in questionable rollover transactions.  Berman does not dispute that he committed

errors that resulted in the preparation and filing of a VCP.  Berman contends that Plaintiffs failed to prove that any errors breached a duty owed to the Plaintiffs.  Berman also contests the need for the VCP and the amount of damages that are claimed for any breach of duty.

Plaintiffs failed to prove the existence of a standard of care requiring the maintenance of Plan documents and failed to prove that Berman breached a duty to maintain Plan documents.  Plaintiffs also failed to prove that Berman was responsible for any failures involving the Schaim rollover transactions.  The evidence shows that Millimaki and Eggert failed to provide Berman the Schaim transaction documents in a timely manner.

The evidence offered at trial proves that Berman was negligent in providing plan document services, plan testing services, and assistance with respect to ensuring compliance with plan limits, and assistance with determination of eligibility.  Report of Nicholas White at 34-36, Ex. DE.  The Court finds that Berman was negligent as follows:

(a)     Improperly deleting Lipsey, Millimaki & Company as a participating employer and plan sponsor;

(b)     Allowing ineligible employees – including Millimaki's wife – to participate in the Plan;

(c)     Failing to meet contribution testing requirements governing highly compensated employees in all five years tested (1997 through 2001), resulting in excess contributions totaling $22,220.80 for the years in question; and

(d)     Allowing plan participants to exceed maximum income deferral levels for the years 1996 through 2001.

Unlike Millimaki and Eggert, there is no evidence that Berman ever delayed the production of information or documents that were required in order to evaluate the Plan's compliance with all tax laws.  Instead, following the receipt of available Plan documents, it was learned that Berman had committed a number of errors.  Although the errors did not prompt the initial review of the Plan, the Court finds that Berman's errors articulated above did require a VCP, and his failures resulted in significant damages to the Plan and the Plaintiffs.

1    **E.  CAUSATION AND DAMAGES**

2         As previously held, the Court finds that Plaintiffs have proved that Defendants

3    Millimaki and Eggert breached certain fiduciary duties, and that Berman was negligent in

4    performing his duties as TPA.  Plaintiffs must also prove loss causation as part of the claim for

5    breach of fiduciary duty.  DeFazio v. Hollister, 2012 WL 1158870 at 31 (E.D. Cal. 2012)[1]

6    ("To seek damages under § 1132(a)(2) and (a)(3), plaintiffs generally have the burden of

7    proving the harm caused by defendants' breaches of their fiduciary duties by a preponderance

8    of the evidence.") Id. (citing CIGNA Corp. v. Amara, 131 S.Ct. 1866, 1881 (internal citations

9    omitted)); see also, e.g., Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995) ("a plaintiff

10   must show a causal link between the [breach] and the harm suffered to the plan"); Friend v.

11   Sanwa Bank Cal., 35 F.3d 466 (9th Cir. 1994) ("ERISA holds a trustee liable for a breach of

12   fiduciary duty only to the extent that losses to the plan result from the breach").  Furthermore,

13   Plaintiffs must prove that Berman's negligence caused the alleged damages.  Berkley v.

14   Dowds, 152 Cal. App. 4th 518, 528 (2007) (Plaintiff must "allege facts, albeit as succinctly as

15   possible, explaining how the conduct caused or contributed to the injury") (quoting Bockrath

16   v. Aldrich Chemical Co. 21 Cal. 4th 71, 78–79 (1999)).  Where ERISA liability is established

17   against two or more defendants, liability will be joint and several.  Katsaros v. Cody, 568 F.

     Supp. 360 (E.D. N.Y. 1983), aff'd, 744 F.2d 270 (2d Cir. 1984).

18        Plaintiffs claim $275,425.41 for fees and expenses as damages arising from

19   Defendants' breaches of fiduciary duty and negligence.  The Court finds that Plaintiffs have

20   proved Defendants caused some, but not all, of the alleged damages.

21            **i.   Damages related to locating and reviewing Plan documents**

22        The fees requested fall into one of two categories (1) fees relating to locating and

23   reviewing Plan documents, and (2) charges to prepare, process and conclude the VCP.  The

24   Court finds that both fiduciaries Millimaki and Eggert are jointly and severally liable for fees

25   for Means & Associates to locate and review documents.  Berman is not responsible for these

26   fees.  These document retrieval fees were clearly necessitated by Millimaki and Eggert's

27

28
     ---
     [1] Discussions in the DeFazio v. Hollister case regarding the availability of equitable relief is
     distinguishable because in this case such request was not pled and is not ripe for adjudication.

                                           25

     MEMORANDUM DECISION FOLLOWING TRIAL

breaches of fiduciary duty in their refusal to provide available records in August 2005; refusal to provide the new trustees access to brokerage statements; failure to properly evaluate and account for the Schaim rollover transactions; and refusal to step aside as trustees. The Court recognizes that ongoing litigation contributed to some of the delays and the contentious positions of the parties, but did not otherwise excuse Millimaki and Eggert for their delays and failures.

Millimaki and Eggert are liable for the following fees charged by Means & Associates: inventory of Plan documents, document analysis for compliance problems, preparation of letters and attendance at meetings regarding missing documents, addressing fiduciary duty issues and rollover errors, and taking steps to change trustees' names on participant-directed accounts. The Court has thoroughly reviewed the Pam Means & Associates Co. itemized billing statements, and a review shows that these expenses total $16,307.50. Means & Assoc. Invoices at L-676 to L-680, Ex. 47. As such, Millimaki and Eggert are jointly and severally liable for this amount in damages.

### ii. Damages related to the VCP

The VCP identified and the IRS confirmed four failures in the Plan that required corrective action. VCP Compliance Statement 9/29/07, Ex. 61. Millimaki, as functional administrator, caused two of the four failures, and Berman, as TPA, caused all four. Eggert, on the other hand, was not responsible for any of the four failures and is not liable for fees associated with the preparation of the VCP. While Millimaki was not responsible for all four failures in the Plan, Millimaki and Berman are both liable for fees related to the preparation and processing of a VCP. Once a breach of trust is established, uncertainties in fixing damages will be resolved against the breaching fiduciary. See Leigh v. Engle, 727 F.2d 113, 138 (7th Cir. 1984); James F. Jordan et al, *Handbook on ERISA Litigation* § 3.05(c), at 1-114 (1992). Millimaki's breaches of fiduciary duty as a functional administrator required the filing of a VCP to protect the eligibility of the Plan. As a result of Millimaki's and Berman's failures, Plaintiffs incurred significant fees and damages to prepare and submit the VCP to the IRS. The Court finds that Millimaki and Berman are liable for the VCP-related damages as a result.

26

Upon review of the fees incurred as a result of the VCP, the Court finds that Plaintiffs are entitled the amounts billed by Means & Associates that relate to the VCP.  This amount totals $21,186.70.  Means & Assoc. Invoices at L-681 to L-685, Ex. 47.  Similarly, Plaintiffs are entitled to recover $375 from Millimaki for legal fees paid to Thanasi Prevolos, Esq. for assessment of legal compliance.  Prevolos & Associates Invoice, Ex. 50.  Plaintiffs are further entitled to recovery of the $1,300 compliance fee to file the VCP to the IRS.

### iii. Damages related to legal fees

Millimaki's breaches of fiduciary duty and Berman's negligence required a majority of the legal fees charged by Branton & Wilson APC from June 16, 2006 through September 2007, which were related to the VCP.  However, the Plaintiffs are not entitled to Branton & Wilson attorney fees following the favorable determination letter issued by the IRS after submission of the VCP.  09/28/07 IRS Determination Letter, Ex. 63.  As to the pre-September 2007 attorney fees, Plaintiffs have provided sufficient detailed billing for $45,557 in attorney fees, which relate to the preparation and processing of the VCP.  Branton & Wilson Slip Billing, Ex. 65.[2]  Accordingly, Millimaki and Berman are held to be liable for this amount.

The Court finds that Plaintiffs have failed to prove that attorney fees charged by Solomon Ward constitute damages resulting from any negligence or breach of fiduciary duty.  A review of the invoices show that the fees are for litigating the state dissolution action, attempting to settle the state court action, and reviewing the pleadings in the instant action.  While the settlement negotiations in the state case addressed, among other things, the production of Plan documents, there were far more efficient means to seek production of the documents through discovery.  Meanwhile, any requested attorney fees that relate to the VCP are duplicative of the attorney fees charged by Branton & Wilson for work on the VCP and have not been shown to have been necessary in preparing or processing the VCP.

---

[2] The Court finds that the following identified fees are recoverable: Slip ID Nos. 291, 294, 296, 298, 303, 312, 314, 364, 429, 437, 446, 448, 460, 509, 510, 515, 518, 524, 555-558, 560, 562, 572, 576, 590, 610, 614, 616, 622, 638, 646, 647, 650, 937, 972, 973, 976, 1043, 1054, 1067, 1105, 1108, 1113, 1179, 1180, 1204, 1206, 1208, 1305, 1316, 1340, 1342, 1349, 1432, 1580.

MEMORANDUM DECISION FOLLOWING TRIAL

1   Plaintiffs have similarly failed to prove that attorney fees for Mazzarella Calderelli

2   LLP were caused by any breach of fiduciary duty or other failure.  These fees primarily relate

3   to the state court dissolution proceedings, and as such Plaintiffs are not entitled to relief.

4   **iv.  Damages related to additional contributions to bring the Plan into compliance**

5   Plaintiffs have alleged damages in the amount of $22,220.80 in additional 401(k)

6   contributions required to bring the Plain into compliance.  Plaintiffs incurred these costs as a

7   result of Berman's mistake of allowing plan participants to exceed their maximum

8   contributions the Plan.  As previously discussed, Berman as TPA failed to meet the proper

9   standard of care, and his negligence caused Plaintiffs to incur this expense to bring the Plan

10   into compliance.  Accordingly, the Court finds Berman solely liable for the amount of

11   $22,220.80.

12   In sum, Plaintiffs are entitled to damages totaling $106,947.00 as follows:

| Damages | Defendants Liable for Damages |
|---|---|
| $16,307.50 *Means doc. inventory fees* | Millimaki & Eggert (joint and several liability) |
| $21,186.70 *Means VCP-related fees* | Millimaki & Berman [3] |
| $1,300.00 *IRS compliance fee* | Millimaki & Berman |
| $375.00 *Prevolos legal fee* | Millimaki & Berman |
| $45,557.00 *Branton & Wilson fees* | Millimaki & Berman |
| $22,220.80 *Add'l compliance fees* | Berman alone |
| Total Damages: | $106,947.00 |

**F. Indemnification under the plan.**

Pursuant to an indemnification provision of the Plan, Defendants Millimaki and Eggert

assert that the Plan employer, LYMS, Inc., is obligated to indemnify and hold Defendants

harmless against any and all claims, losses, damages, expenses, and liabilities they incurred in

[3]  The Court will set out in the judgment, after briefing, whether the liability for the VCP related damages, including attorney and accounting fees, is joint and several.

28

the exercise and performance of their powers and duties while acting as Trustees of the Plan. Under §7.13 of the Plan, "The Employer agrees to indemnify and hold harmless the Trustee against any and all claims, losses, damages, expenses and liabilities the Trustee may incur in the exercise and performance of the Trustee's powers and duties hereunder, unless the same are determined to be due to gross negligence or willful misconduct."

The Court finds that the Defendants are not entitled to indemnification.  Both Millimaki and Eggert were grossly negligent in failing to obtain and/or forward the Schaim documents to the TPA.  These failures prevented a review of the Schaim transactions by Berman, the TPA, to determine whether they were permitted and proper, and required an accounting for the rollover and profits in filed forms.  Plaintiffs were required to initiate a review of the Plan due to potential serious consequences, including disqualification, which could be imposed for permitting an unqualified rollover into the Plan.  In addition, the deliberate refusal to relinquish duties as trustee constitutes willful misconduct that disqualifies the Defendants from being indemnified for damages that were proximately caused by the refusal.

As to damages relating to the preparation of the VCP and bringing the Plan into compliance, these damages were caused by actions taken by Millimaki as a functional administrator and therefore are not subject to indemnification.

**G. Attorneys' fees and costs**

Under 29 U.S.C. § 1132(g), this Court may award attorneys' fees and costs upon application by Plaintiffs following entry of these Findings of Fact and Conclusions of Law. Cambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869 (2d Cir. 1987).  The Court directs the parties to address whether attorney fees are appropriate in this case and, if so, in what amount.

**H. CONCLUSION**

Based on the above findings of fact and conclusions of law, the Court rules in favor of the Plaintiffs.  The Counter-complaint is dismissed with prejudice.  In accordance with the Court's findings, Plaintiffs are directed to prepare a proposed judgment on or before **Tuesday, April 2, 2013**.  By the same date, each Party, except Eggert, shall submit to the Court a brief

29

1   that addresses the issue of joint and several liability for the VCP related damages awarded

2   herein.

3      **IT IS SO ORDERED.**

4   DATED: March 19, 2013

5

6              HON. GONZALO P. CURIEL
               United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30

MEMORANDUM DECISION FOLLOWING TRIAL