# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYMS, INC.; WENDY YOUNGREN and CATHY MEANS, as Successor Trustees Of the LYMOS 401(K) Savings Plan,<br><br>Plaintiffs,<br><br>v.<br><br>BRUCE MILLIMAKI and MICHAEL EGGERT, Former Trustees of the LYMOS 401(K) Savings Plan; GARY BERMAN, Individually,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTION. | Civil Action No. 08-cv-1210-GPC-NLS<br><br>Hon. Gonzalo Curiel<br><br>**SUPPLEMENTAL MEMORANDUM DECISION**<br><br>Complaint Filed: July 7, 2008<br>Trial Date:  December 3, 2012 |

# INTRODUCTION

This matter came to trial before the Court on December 3 through 12, 2012. Plaintiffs are LYMS, Inc., Wendy Youngren and Cathy Means, ("Plaintiffs") as Trustees of the LYMOS 401(K) Savings Plan ("the Plan"). Plaintiffs brought this action against the Plaint's former trustees, Defendants and Counterclaimants Bruce Millimaki ("Millimaki") and Michael Eggert ("Eggert") and against Defendant Gary Berman ("Berman') as the third party administrator ("TPA") of the Plan. The issues have been tried and a Memorandum Decision was issued by the Court on March 19, 2013. (Dkt. No. 277, "Memorandum Decision.")

In the Memorandum Decision, the Court directed the parties to file briefs addressing the issue of joint and several liability as to Millimaki and Berman for damages related to the creation and submission of the Voluntary Compliance Program ("VCP") application to the Internal Revenue Service ("IRS"). (Id. at 29-30.) Defendants Millimaki, Eggert, and Berman submitted a brief arguing that under California law, Defendants Millimaki and Berman cannot be held jointly and severally liable, and request the damages be assessed according to the two defendants' proportional fault. (Dkt. No. 279, "Def. Brief.") Plaintiffs filed a separate brief, asserting that under ERISA and California common law, Defendants Millimaki and Berman may be held jointly and severally liable for the VCP-related damages. (Dkt. No. 278, "Pl. Brief.")

# DISCUSSION

The sole remaining issue is whether liability among Defendants Millimaki and Berman for damages incurred in the VCP process may be joint and several. Following a seven-day trial, the Court found Millimaki and Eggert jointly breached their fiduciary duties. (Memorandum Decision at 17.) The Court further found Millimaki alone breached his fiduciary duties in his capacity as a functional administrator by approving Plan documents that misidentified the proper

1

employer and allowing Linda Millimaki, his wife, to participate in the Plan in violation of the Plan. (Id. at 19-20.)   The Court found Berman, as the third party plan administrator, negligent under California law for (1) maintaining incomplete records; (2) filing erroneous information returns with the IRS for most years; and (3) participating in questionable rollover transactions. (Id. at 23.)

In assessing damages, the Court concluded the Defendants caused some, but not all, of the alleged damages. (Id. at 25.)  The Court separately assessed the costs associated with the creation and submission of the VCP application to the IRS.  In so doing, the Court determined that of the four failures identified by the IRS, Millimaki, as functional administrator, caused two of the four failures, and Berman, as TPA, caused all four failures.  (Id. at 26.)  As such, Millimaki and Berman were found liable for the VCP-related damages, and Eggert was not liable for any of VCP-related damages. (Id.)  The VCP-related damages for which Millimaki and Berman were found liable include $21,186.70 in fees to Means & Associates, $375 to Thanasi Prevolos, Esq., $1,300 compliance fee to the IRS, and $45,557.00 in legal fees to Branton & Wilson. (Id. at 27-28.) The amount in damages related to the VCP-related fees alone totals $68,418.70.

Plaintiffs urge the Court to impose joint and several liability against Millimaki and Berman for all of the VCP-related damages. (Pl. Brief at 2.) Plaintiffs argue ERISA does not contain any statutory provisions addressing the conditions for imposition of joint and several liability upon a defendant liable for breach of fiduciary duty under ERISA, such as Millimaki, and another defendant liable for common law negligence, such as Berman, where both defendants wrongful acts caused the same injury. (Id.)  Plaintiffs assert that other courts have found defendants, both fiduciaries and non-fiduciaries, may be held liable for damages. (Id., citing Schalffler v. McDowell, 1985 WL 177515 *3, 6 Empl. Ben. Cases 2485 (W.D. Pa. 1985)).  As the Court has found Millimaki and Berman

2

**SUPPLEMENTAL MEMORANDUM DECISION**          Case No. 08-cv-1210 GPC-NLS

responsible for the primary problems that drove the decision to pursue a VCP application, Plaintiffs argue it follows both defendants were proximate causes of and substantial contributing factors to the VCP-related damages. (Id. at 5.) Finally, Plaintiffs assert the VCP damages are not practically divisible in any rational manner between the Defendants, and any distinction among the types of deficiencies in the plan does not render the injury divisible because the same work would have been done to prepare the VCP application. (Id.)

Defendants argue Millimaki and Berman cannot be held jointly and severally liable for the VCP-related damages. (Def. Brief at 3.)  The Court found Berman liable under California law, and as ERISA does not preempt California law, Berman's liability and apportionment of damages should also be assessed under California law. (Id. at 3-5.)  Pursuant to Cal. Civ. Code § 1431.1, Defendants argue liability must be apportioned between Millimaki and Berman in relation to their degree of fault. (Id.)  As the Court found Millimaki breached his fiduciary duties under ERISA, his liability cannot be joint and several with Berman who was not found to be a fiduciary under the Plan. (Id. at 6.)  As such, Berman cannot be held jointly and severally liable as a co-fiduciary.  (Id. at 8.) Moreover, Defendants contend joint and several liability is inequitable where Millimaki as the fiduciary was liable for two of the four failures identified by the IRS and Berman was responsible for all four. (Id. at 9.)  As such, liability for the VCP-related damages should be apportioned to Millimaki and Berman in proportion to their relative degree of fault. (Id.)

For the reasons below, the Court concludes that Defendants Millimaki and Berman may be held jointly and severally liable for the VCP-related damages.

**A. No ERISA Preemption**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air

3

Lines, Inc. 463 U.S. 85, 90(1983). As set forth in 29 U.S.C. §1144(a), ERISA, section 514(a) provides, absent certain exceptions not applicable here, that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter *relate to* [such] employee benefit plan...." 29 U.S.C. § 1144(a) (italics added). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw, 463 U.S. at 96-97. "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." Ingersoll-Rand Co. v. Mclendon, 498 U.S. 133, 139 (1990)(citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52, 54 (1987)). Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements. Id. (internal citations omitted). The Supreme Court has recognized limitations to ERISA's preemption clause. Only state laws that relate to benefit *plans* are pre-empted. Id. (citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 23 (1987). Moreover, the ERISA preemption clause does not apply to "generally applicable [state] statute[s] that make[] no reference to, or indeed function [] irrespective of an ERISA plan." Id.

Under ERISA, "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan under specific circumstances." 29 U.S.C § 1105(a). Courts have interpreted this provision to mean where ERISA liability is established against two or more defendants, liability will be joint and several. Katsaros v. Cody, 568 F. Supp. 360 (E.D. N.Y. 1983), aff'd, 744 F.2d 270 (2d Cir. 1984). ERISA is silent as to whether co-liability may exist between a defendant who has breached his ERISA fiduciary duties and a defendant who was negligent under state law in performing his duties as a third party administrator.

4

**SUPPLEMENTAL MEMORANDUM DECISION**         Case No. 08-cv-1210 GPC-NLS

Here, neither party asserts that the common law principles which apply to the apportionment of liability and damages to tortfeasors "relate to" an ERISA benefit plan. Indeed, common law principles as articulated by the California courts and legislature make no reference to ERISA plans. As such, ERISA does not preempt California state law on the issue of common law negligence and apportionment of damages. Accordingly, the Court applies California state law to determine Millimaki's and Berman's apportionment of damages for the VCP-related fees.

**B. Joint and Several Liability and Comparative Negligence under California Law**

California courts have long held concepts of comparative fault and joint and several liability apply in allocating losses among joint tortfeasors. In <u>Li v. Yellow Cab Co.</u>, the California Supreme Court abolished contributory negligence in favor of pure comparative negligence. <u>Li v. Yellow Cab Co.</u>, 13 Cal. 3d 804, 813 (1975). The Court condemned the harsh and inequitable nature of the "all-or-nothing" rule of contributory negligence and found that "liability for damages will be borne by those whose negligence caused it in direct proportion to their respective fault." <u>Li v. Yellow Cab Co.</u>, 13 Cal. 3d 804, 810, 813, 828 (1975). Thus, the Court adopted a rule of "'pure' comparative negligence, the fundamental purpose of which shall be to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties." <u>Id.</u> at 829. Under this finding, a negligent plaintiff could still recover for damages from other negligent defendants. <u>Id.</u>

Three years later, the California Supreme Court in <u>American Motorcycle</u> reaffirmed the importance of joint and several liability. <u>Am. Motorcycle Assn. v. Superior Court</u>, 20 Cal. 3d 578, 587 (1978). Under joint and several liability, "each tortfeasor whose negligence is a proximate cause of an indivisible injury

5

remains individually liable for all compensable damages attributable to that injury." Id. at 582.  The Court further explained, "[l]iability attaches to a concurrent tortfeasor in this situation . . . because he is responsible for all damage of which his own negligence was a proximate cause." Id. at 587.  Under American Motorcycle, plaintiffs can be fully compensated for injuries from one defendant because that defendant may seek reimbursement from other defendants according to each defendant's apportioned share of fault. Id.  Stated differently, "any defendant could obtain equitable indemnity, on a comparative fault basis, from other defendants, thus permitting a fair apportionment of damages among tortfeasors." Evangelatos v. Superior Court, 44 Cal. 3d 1188, 1197 (1988)(citing American Motorcycle, 20 Cal. 3d at 591-98).

In a subsequent case, the Court synthesized the public policies underlying comparative negligence: "First ... is maximization of recovery to the injured party for the amount of his injury to the extent fault of others has contributed to it.... Second is encouragement of settlement of the injured party's claim.... Third is the equitable apportionment of liability among the tortfeasors." Sears, Roebuck & Co. v. Int'l Harvester Co., 82 Cal. App. 3d 492, 496 (Ct. App. 1978)(citing Li, supra, 13 Cal.3d 804, and American Motorcycle, supra, 20 Cal. 3d 578).  More recently, the Court noted "[p]ast California cases have made it clear that the 'comparative fault' doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an 'equitable apportionment or allocation of loss.'" Knight v. Jewett, 3 Cal.4th 296, 313–314 (1992).

Despite the developments at common law, the retention of "joint and several liability doctrine produced some situations in which defendants who bore

6

only a small share of fault for an accident could be left with the obligation to pay all or a large share of the plaintiff's damages if other more culpable tortfeasors were insolvent." <u>Evangelatos</u>, 44 Cal. 3d at 1198. To address this issue, in 1986, the California voters passed Proposition 51 which sought to further modify the tort recovery system. Under Cal. Civ. Code § 1431:

> An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several, except as provided in Section 1431.2, and except in the special cases mentioned in the title on the interpretation of contracts. This presumption, in the case of a right, can be overcome only by express words to the contrary.
> Cal. Civ. Code § 1431 (West)

Proposition 51 codified its purpose in Section 1431.1, relied upon by Defendants in this matter, which states:

> The legal doctrine of joint and several liability, also known as 'the deep pocket rule,' has resulted in a system of inequity and injustice that has threatened financial bankruptcy of . . . private individuals and businesses and has resulted in higher prices for goods and services to the public and in higher taxes to the taxpayers . . defendants in tort actions shall be held financially liable in closer proportion to their degree of fault. To treat them differently is unfair and inequitable.
> Cal. Civ. Code § 1431.1 (West)

This "purpose" section relates to 1431.2, the heart of Proposition 51, which states in part, "[i]n any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint." Cal. Civ. Code § 1431.2 (West).[1] The California Supreme Court has interpreted this provision as

---

[1] Importantly, Section 1431.2 does not apply in this case. As such, Defendants reliance on 1431.1, which underscores the purpose for Section 1431.2, does not instruct this Court to apportion damages pursuant to a strict comparative fault theory.

7

**SUPPLEMENTAL MEMORANDUM DECISION**              Case No. 08-cv-1210 GPC-NLS

"retain[ing] the traditional joint and several liability doctrine with respect to a plaintiff's *economic* damages, but adopt[ing] a rule of several liability for *noneconomic* damages, providing that each defendant is liable for only that portion of the plaintiff's noneconomic damages which is commensurate with that defendant's degree of fault for the injury." Evangelatos, 44 Cal. 3d at 1198. Thus, under California law, both joint and several liability and comparative negligence are still viewed as appropriate methods to apportion liability and damages among tortfeasors. See Aidan Ming-Ho Leung v. Verdugo Hills Hosp., 55 Cal. 4th 291, 303 (2012) (observing comparative fault and joint and several liability are two legal concepts central to California negligence law).

### C. Apportionment of Damages

The Court's judgment found Defendants Millimaki and Berman jointly responsible for fees incurred as a result of creating and filing the VCP application to the IRS. (Memorandum Decision at 24.) Upon review of the VCP, the IRS issued a Compliance Statement which identified a number of problems with the Plan. (Id. at 12.) Those problems included: (1) Failing to provide documents correctly identifying the proper Employer under the Plan; (2) Allowing ineligible employees – including Millimaki's wife – to participate in the Plan; (3) Failing to meet contribution testing requirements governing highly compensated employees in all five years tested, resulting in excess contributions totaling $22,220.80 for the years in question, and requiring the Company to make an additional contribution in that amount; and (4) Allowing plan participants to exceed maximum income deferral levels for the years 1996 through 2001. (Id. at 12-13.)

### 1. Millimaki's Liability regarding VCP

The Court found Millimaki breached his fiduciary duty as a functional administrator for the first two problems identified by the IRS in assessing the VCP application - failing to recognize the basic error of misidentification of the

8

1  Employer and allowing ineligible participants in the Plan. (Id. at 19, 20.)  The
2  Court further found Millimaki reasonably relied upon the work of Berman, the
3  TPA, in assessing the contribution testing requirements and the maximum income
4  deferral levels. (Id. at 20.)  As such, Millimaki did not breach his fiduciary duty in
5  regards to the third and fourth problems identified by the IRS. (Id.)

### 2. Berman's Liability regarding the VCP

7       The Court found Berman negligent for all four of the problems identified by
8  the IRS assessment of the VCP application. (Id. at 24.)  Berman's errors required
9  a VCP and his failures "resulted in significant damages to the Plan and the
10 Plaintiffs." Id.   Moreover, Berman alone was responsible for the third and fourth
11 failures identified by the IRS, and therefore solely liable for the $22,220.80 fee to
12 bring the Plan into compliance. (Id. at 28.)

### 3. Apportionment of Damages

14      In assessing damages related to the VCP, the Court held "[w]hile Millimaki
15 was not responsible for all four failures in the Plan, Millimaki and Berman are
16 both liable for fees related to the preparation and processing of a VCP." Id. at 26.
17 The Court observes that the fees related to the preparation and processing of the
18 VCP application do not clearly correspond to the ultimate problems identified by
19 the IRS.

20      As noted by the Plaintiffs, the decision to pursue a VCP was driven by the
21 problems attributable to Millimaki and Berman, jointly, that could have led to
22 Plan disqualification. (Pl. Brief at 4.)  Plaintiffs argue that the fees related to the
23 VCP process are not divisible because the same work would have to be done. (Id.
24 at 4.)  Defendants argue that California law necessitates a finding that damages
25 must be apportioned according to each Defendants' comparative fault. (Def. Brief
26 at 9.)

9

**SUPPLEMENTAL MEMORANDUM DECISION**                    Case No. 08-cv-1210 GPC-NLS

While neither party captures a full portrayal of California law, the Court ultimately concludes the Millimaki and Berman are jointly and severally liable for the VCP-related damages. While a number of cases do refer to "indivisible injuries" with little to no explanation, post-American Motorcycle cases do not rely on indivisibility as the threshold factor. Rather, the modern "cases are essentially uniform in holding for purposes of joint and several liability the plaintiff's injuries need only be causally interrelated, not physically inseparable." Henry v. Superior Court, 160 Cal. App. 4th 440, 454 (2008)(citing Leko v. Cornerstone Bldg. Inspection Service 86 Cal.App.4th 1109, 1115 (2001) ["Joint tortfeasors may act in concert or independently of one another. [Citation.] '.... What is important is the relationship of the tortfeasors to the plaintiff and the interrelated nature of the harm done' "]; TSI Seismic Tenant Space, Inc. v. Superior Court 149 Cal.App.4th 159, 167, fn. 3, (2007) [same].) As articulated in American Motorcycle, "[T]he 'joint and several liability' label ... simply embodies the general common law principle ... that a tortfeasor is liable for any injury of which his negligence is *a* proximate cause." 20 Cal. 3d at 587.

Here, Millimaki's breach of fiduciary duties to the Plan and Berman's negligence as a third party administrator *both* caused Plaintiffs to incur losses in pursuance of the VCP corrective action. Millimaki and Berman, having worked closely over the years to oversee and manage the Plan, engaged in numerous actions that resulted in the need for the VCP. As such, the interrelated nature of their actions in connection with the damages incurred by Plaintiff support the finding that they be held jointly and severally liable for the VCP-related damages.

## CONCLUSION

The Court concludes Defendants Millimaki and Berman are jointly and severally liable to Plaintiffs for the VCP-related damages, the amount which totals $68,418.70.

**IT IS SO ORDERED.**

DATE: July 2, 2013

_____
HONORABLE GONZALO P. CURIEL